Appeal from Fifth District.

## STATE v. SCOTT.

No. 3430.   Decided March 11, 1920.   (188 Pac. 860.)

1. WITNESSES—STATE MAY NOT IMPEACH OWN WITNESS BY SHOW-
   ING REPUTATION, BUT MAY SHOW INCONSISTENT STATEMENTS. The
   state may not impeach its own witness by showing his general
   reputation for truth and veracity, but, where a witness makes
   conflicting statements, may call his attention to such state-
   ments, and in case he has misled or deceived the state to its
   prejudice, it may, under certain circumstances, produce the
   persons who heard him make the statements which conflict
   with his testimony, and show by them what the witness said.[1]
   (Page 559.)

2. WITNESSES—ERROR TO PERMIT PROSECUTOR TO INTERROGATE OWN
   WITNESS FOR PURPOSE OF IMPEACHMENT. The court erred in
   permitting prosecuting attorney to interrogate a witness for
   the state for the purpose of impeachment by showing incon-
   sistent statements, where the witness made no contradictory
   statements, and had not misled the state as to what his testi-
   mony would be.   (Page 559.)

3. WITNESSES—STATE CANNOT ASSAIL OWN WITNESS FOR PURPOSE
   OF IMPEACHMENT. In a criminal prosecution, when a dealer tes-
   tified as to time that accused bought certain articles from him,
   and defendant on cross-examination introduced a sales slip
   showing a sale of the articles on a date other than that con-
   tended by the state to be the date of the sale, the court erred
   in permitting the state to assail the dealer and interrogate him
   for the purpose of impeachment, or to reflect upon the motives
   of the witness and his veracity, merely because the dealer in-
   sisted that the date on the sales slip was the date upon which
   the transaction was had.   (Page 561.)

4. CRIMINAL LAW—COURTS TAKE JUDICIAL NOTICE OF NATURAL LAWS
   AND TIME OF SUNSET. Courts are bound to take judicial notice
   of natural laws, and hence that at Milford the sun set on the
   evening of December 13th at 5 o'clock, that darkness of night
   set in at 6 o'clock, and that it was completely dark before 7
   o'clock, and that the sun passes below the horizon more nearly
   perpendicularly in winter than in summer, and that twilight
   is correspondingly shorter in winter than it is in summer.[2]
   (Page 562.)

[1] *State* v. *Inlow*, 44 Utah, 499, 500, 141 Pac. 530, Ann. Cas.
1917A, 741.

[2] *Preece* v. *O. S. L. R. Co.*, 48 Utah, 560, 161 Pac. 43.

5. CRIMINAL LAW—LATITUDE IN CROSS-EXAMINATION NOT DISTURBED EXCEPT FOR ABUSE OF DISCRETION. While it is true that much latitude must be allowed to the trial courts in permitting cross-examination of witnesses, and that their rulings in that regard will not be disturbed, unless it is made to appear that the discretion with which the law invests them has been abused, yet when it is manifest that legitimate bounds of cross-examination by the state of its own witness has been transcended to the prejudice of the defendant, a judgment of conviction cannot stand. (Page 562.)

6. RAPE—PROOF OF FEMALE'S UNCHASITY NOT COMPETENT WHERE ACCUSED DENIES ANY SEXUAL RELATIONS. In a rape case, where defendant denied that he was with the prosecutrix on the night in which he was alleged to have committed the wrongful act, or that he ever had sexual intercourse with her, accused was not entitled to prove that the general reputation of the prosecutrix for chastity was bad, at least when not introduced for the purpose of affecting the credibility of the prosecutrix. (Page 563.)

7. RAPE—GENERAL REPUTATION OF PROSECUTRIX FOR UNCHASTITY COMPETENT WHERE SEXUAL ACT IS ADMITTED. Where defendant in prosecution for rape by force admits the sexual act, or contends that the prosecutrix consented thereto, evidence that the general reputation of the prosecutrix for chastity was bad is admissible.[3] (Page 563.)

8. RAPE—PROOF OF UNCHASTITY OF PROSECUTRIX INADMISSIBLE IN STATUTORY PROSECUTION. It is inadmissible in a prosecution for statutory rape, where sexual intercourse is had with a female under the age of consent, to prove that the general reputation of the prosecutrix for chastity is bad. (Page 564.)

9. RAPE—PROOF OF SPECIFIC UNCHASTE ACTS ON THE PART OF PROSECUTRIX INADMISSIBLE. If it is desired to prove that a prosecutrix in a rape case is a lewd woman, that may only be done by attacking her general reputation for chastity and morality, and not by showing specific acts of wrongdoing. (Page 566.)

10. CRIMINAL LAW—OTHER ACTS OF INTERCOURSE BETWEEN PROSECUTRIX AND ACCUSED ORDINARILY COMPETENT. That the prosecutrix in a rape case has had intercourse with the defendant at other times than the one in question may ordinarily be shown. (Page 566.)

11. WITNESSES—PROOF OF INTERCOURSE WITH THIRD PERSON SOMETIMES COMPETENT TO SHOW MOTIVE OF PROSECUTING WITNESS. In

[3] *State* v. *McCune*, 16 Utah, 176, 51 Pac. 818.

[4] *State* v. *Thorne*, 39 Utah, 208, 117 Pac. 58; *State* v. *Vance*, 38 Utah, 1, 110 Pac. 434.

a prosecution for rape, where it was the theory of defendant that prosecutrix had intercourse with a third person, and that, to shield herself in view of supposed pregnancy, she wrongfully charged defendant with the offense, the accused had the right to prove by the prosecutrix on cross-examination that such was her purpose in lodging the complaint, and to establish that fact, could prove that she had had intercourse with such third person.   (Page 566.)

12.  WITNESSES—IMPROPER TO PERMIT CROSS-EXAMINATION OF ACCUSED IN RAPE CASE CONCERNING DIVORCE FROM WIFE.  In a prosecution for rape, cross-examining defendant with respect to his obtaining a divorce from his first wife, and when he obtained it, thereby intimating that he had commenced keeping company with his present wife before he had obtained the divorce from his first wife, was entirely collateral to any issue in the case.   (Page 566.)

13.  WITNESSES—COLLATERAL FACTS MAY SOMETIMES BE SHOWN ON CROSS-EXAMINATION OF DEFENDANT TO A LIMITED DEGREE.  While collateral facts may very often be shown on cross-examination to affect the credibility of an accused, and while such matters are largely within the sound discretion of the trial courts, there must be a limit to the introduction of collateral matter.[4]   (Page 566.)

14.  WITNESSES—CROSS-EXAMINATION OF DEFENDANT BY REPEATING TESTIMONY OF PROSECUTRIX HELD IMPROPER.  Where accused on his examination in chief denied the rape, and denied that he was with the prosecutrix on the occasion testified to by her, it was error for the prosecuting attorney on cross-examination to repeat in his questions all that was testified to by prosecutrix by asking numerous questions in each one of which some fact or facts stated by her were included.   (Page 567.)

15.  WITNESSES—IMPROPER FOR PROSECUTING ATTORNEY TO CROSS-EXAMINE CHARACTER WITNESS AS TO OWN CHARACTER.  In a prosecution for rape, where defendant produced a witness to testify that the general reputation of the prosecutrix for truth and veracity was bad, it was error for the court on cross-examination to permit the prosecuting attorney to ask the witness as to what his reputation was in the community for truth and veracity; his own reputation being foreign to matter testified to in chief.   (Page 568.)

16.  WITNESSES—STATE MAY IMPEACH CHARACTER WITNESS.  The state has the right to impeach a witness produced by defendant, in a prosecution for rape to testify as to the female's reputation for truth and veracity, by showing that his general reputation for truth and veracity is bad, or can assail his credibility by the usual methods.   (Page 568.)

17. CRIMINAL LAW—REMARK BY COURT THAT WITNESS INTERROGATED NEED NOT INCRIMINATE HIMSELF HELD IMPROPER. In a criminal prosecution, where defendant produced a witness to testify that the general reputation of the prosecutrix for truth and veracity was bad, and the prosecuting attorney on cross-examination asked, "What is your reputation for truth and veracity?" The court's ruling, "I don't think he is required to convict or incriminate himself," was improper as necessarily destroying the whole effect of the witness' impeaching testimony. (Page 568.)

18. CRIMINAL LAW—JURY SHOULD BE INSTRUCTED THAT PROSECUTRIX HAS INTEREST IN RESULT OF CASE. In a prosecution for rape, the court erred in instructing that it was the province of the jury to weigh the testimony of the female "as of any other witness testifying in the case," since the court should point out that the prosecutrix necessarily has a greater interest in the result of such a case than a disinterested witness would have, and that the jury should consider and weigh her testimony with that fact in mind. (Page 570.)

19. CRIMINAL LAW—REVERSIBLE ERROR FOR PROSECUTING ATTORNEY TO TELL JURY THAT IT WAS AGAINST LAW TO IMPEACH DEFENDANT. In a criminal prosecution, it was prejudicial error for the prosecuting attorney in his closing argument to the jury to state that it was against the law to impeach the defendant for truth and veracity until he himself had first put his reputation in issue, the court's only caution being that the jury should pay no attention to what counsel said, but should confine their deliberations to the evidence where the liberty of the defendant depended upon the statement of one witness as against the statements of others. (Page 571.)

Appeal from District Court, Fifth District, Beaver County; D. H. Morris, Judge.

Frank Scott was convicted of rape, and appeals.

REVERSED and REMANDED, with directions to grant a new trial.

W. F. Knox, of Beaver City, for appellant.

Dan B. Shields, Atty. Gen., James H. Wolfe, O. C. Dalby and H. Van Dam, Jr., Asst. Attys. Gen., for the State.

FRICK, J.

The defendant was charged with the crime of rape, and was convicted in the district court of Beaver county and appeals.

For the reasons hereinafter stated we feel compelled to reverse the judgment of conviction and to remand the cause for a new trial. For that reason, and because no good purpose could be subserved by stating the evidence, we shall refrain from doing so, except in connection with and to the extent only that it is necessary to elucidate the particular point decided.

The defendant has assigned a large number of errors. We shall, however, limit our discussion to such only as are deemed material.

The question that is involved in the first assignment arose as follows: At the preliminary hearing before a justice of the peace the state produced the prosecutrix as a witness, who, in effect, stated that on the evening of December 13, 1917, she, at the request of the defendant, started with him from the town of Milford to the town of Beaver, in Beaver county, but that they did not reach the latter place; that they started from a certain café owned by one Frank Mishina, a Jap, at about 7:30 p. m. and that Mishina saw them start from said café. The state also produced said Mishina at the preliminary hearing, who upon being questioned by the prosecuting attorney, in substance testified that the prosecutrix was employed by him in his café as a waitress, and that the defendant was one of his customers; that the prosecutrix at a certain time, the exact date he could not state, but about a week or a week and a half before Christmas, left the café one evening at about 7:30 o'clock, but he did not see, and could not state, and did not know, with whom she went away. At the trial in the district court the prosecutrix was again produced as a witness, and again testified to the facts before stated. Mishina was also again called by the state, and he stated the same facts in practically the same language as he had done before the justice of the peace. The prosecuting attorney was not

satisfied with the Jap's statements that he did not see the prosecutrix and defendant leave the café on the evening in question, and that he did not know with whom she went away. The prosecutor then asked the witness whether he had not stated to the sheriff in the presence of others, naming them, that he saw the prosecutrix and the defendant leave his café on the evening in question. The witness denied the statements attributed to him, and the prosecuting attorney, over the objections and exceptions of defendant's counsel, was permitted to ply the witness with very leading and suggestive questions, in which the veracity and credibility of the witness were vigorously assailed. The prosecuting attorney was also permitted to state in the presence of the jury that he expected to call the sheriff and the other persons named by him to contradict the witness. On being cautioned by the court he did not disclose what he expected to prove by them. While the court permitted the prosecuting attorney to put leading questions to the witness and to ask him concerning certain assumed or supposed statements, it, nevertheless, refused to permit the prosecuting attorney to call the sheriff and the other persons to impeach the witness. Counsel for the defendant, vigorously assails the court's rulings in permitting the leading questions, and insists that they constitute prejudicial error.

It is elementary that the state may not impeach its own witness by showing his general reputation for truth and veracity. It is, however, also elementary that the state, like all other litigants, in case a witness makes conflicting statements, may call his attention to such conflicting statements, and, in case he has misled or deceived the state to its prejudice, it may, under certain circumstances, produce the persons who heard him make the statements which conflict with his testimony and show by them what the witness said. We have no such case here, however. Here the witness, when under oath, adhered to the same statements throughout the entire examination. Moreover, the state always knew precisely what his statements were, and as a matter of course could not have been deceived or misled by anything he testified to. Then, again,

the witness did not question or deny the fact that the prosecutrix left the café with the defendant, as stated by her. All that he insisted upon from first to last was that he did not see them leave the café, and did not know with whom she left, nor did he know the precise date of her leaving. There was, therefore, not the slightest ground on which to base the state's attempted impeachment. Nor was there any reason which would authorize the state to contradict the statements of the witness. Hence it was a gross injustice to him to even indirectly assail his veracity as was done. The most that can be said is that the statements of the witness did not come up to the expectation of the prosecuting attorney in the matter. In view of all the circumstances, however, the state did not even have any reason to expect any other statements from the witness than were made by him. This case, therefore, clearly comes within the doctrine stated in 40 Cyc. 2696, namely:

"The mere fact that a witness has failed to testify as expected does not warrant impeaching him by proof of prior statements in conformity to what he was expected to testify; but proof of prior contradictory statements of a party's own witness is admissible only where the witness has given affirmative testimony hostile or prejudicial to the party by whom he was called; and in such case the proof must be confined to contradictions of the testimony of the witness which is injurious to the party seeking to impeach him."

The rule ordinarily applicable where conflicting statements of a witness are admissible is also stated by this court in *State* v. *Inlow*, 44 Utah, 499, 500, 141 Pac. 530, Ann. Cas. 1917A, 741.

The rule stated in Cyc. is fully supported in *Bullard* v. *Pearsall*, 53 N. Y. 230, and in *Blough* v. *Parry*, 144 Ind. 463, 40 N. E. 70, 43 N. E. 560.

The court therefore committed manifest error in permitting the prosecuting attorney to interrogate the witness in the manner hereinbefore stated. In view of what is disclosed by the record the court might just as well have permitted the prosecuting attorney to produce the impeaching witnesses and permit them to testify fully respecting the alleged statements. To have done that might, perhaps

have been less prejudicial than what was in fact permitted.

What has been said respecting the witness Mishina is equally true respecting the testimony of the witness Larsen. While it is true that the prosecuting attorney did not attempt to show that Larsen made conflicting statements, he was nevertheless permitted, by means of leading and suggestive questions and otherwise, not only to seriously reflect upon the motives of the witness, but also to seriously assail his veracity, all of which was wholly uncalled for. The controversy respecting this witness arose over a certain sales slip which defendant's counsel introduced in evidence as part of the cross-examination of the witness. The materiality of the sales slip arose as follows: The prosecutrix testified that on the evening of the 13th of December, 1917, the evening in question, defendant, in her presence, had purchased from the witness Larsen four lamp globes for use on his car. The defendant denied that he was out with the prosecutrix on the evening in question, and the sales slip showed that the four lamp globes were purchased by the defendant from the witness Larsen on August 5, 1917, and not on December 13th. The evidence of the witness Larsen also was to the effect that the four lamp globes in question were the only ones that were purchased by the defendant from the witness. While the witness had also testified at the preliminary hearing, yet he, at that time, was not interrogated concerning the sales slip. In view, therefore, that the date on the sales slip was in sharp conflict with the statement made by the prosecutrix respecting the time when the lamp globes were purchased, the prosecuting attorney, it seems, was quite desirous to destroy the effect of the sales slip, and in doing so, over the objections of the defendant, was permitted to cross-examine his own witness at great length upon the theory that he was a "hostile witness." There is absolutely nothing in the record from which it can legitimately be inferred that the witness was either favorable to the defendant or hostile to the state. Indeed, the witness seemed to be quite fair and impartial. We thus have a single transaction, which was evidenced by a sales slip issued by a clerk or bookkeeper of the witness in due course of business.

This sales slip, in due time, was delivered to the defendant, and at the time when he paid for the lamp globes, and he in turn delivered it to his counsel, who produced it at the trial and introduced it in evidence as a part of the cross-examination of the witness Larsen, as he had a perfect right to do. So far as the record shows, the transaction was quite regular. Moreover, it seems that the sales slip had passed from Larsen's mind until it was recalled to his attention at the trial. The sales slip thus merely showed a transaction between a dealer and a 'customer. It so happened, however, that the date on which the transaction evidenced by the sales slip was had became quite material in this case, for the reason that the date on the sales slip showing the transaction did not agree with the statement of the prosecutrix, and in view that Mr. Larsen had testified that the sales slip correctly evidenced the transaction the prosecuting attorney assumed that Larsen was hostile to the interests of the state, and that he, for that reason, was unfair, if not untruthful. It must be apparent to all, however, that the defendant had precisely the same right to show the real date on which the lamp globes were purchased that the state had. To do that he had precisely the same right to approach the witness Larsen that the state had. Indeed, the defendant, being related to the transaction, under no circumstances, could be charged as interfering with the state's rights in seeking to establish the actual date of the transaction by producing the sales slip, although the date on the sales slip did not agree with the statements of the prosecuting witness. Nor can the state assail the dealer merely because he insisted that the date on the sales slip was the date upon which the transaction was had.

There is also a circumstance disclosed by the record which somewhat militates against the statement of the prosecuting witness, and, to some extent at least, is corroborative of Mr. Larsen's statement that the transaction of purchasing the lamp globes occurred earlier in the season than the time stated by the prosecutrix. She most emphatically testified that she did not leave work on the evening in question until seven

o'clock p. m., and that she and the defendant left the café at about seven-thirty and not before. In that regard she testified as follows:

"Q. Was it dark at 6 o'clock when Mr. Scott came to supper and asked you to go out for a ride or a dance or a show? A. No, sir. It was not dark. Q. Do you remember if it was dark at seven [o'clock]? A. Sure it was not dark; it was just getting about dusk, and it was not right dark at seven-thirty. Q. It wasn't dark yet at seven-thirty. Are you sure about that? A. I certainly am. Q. You certainly are? A. Yes, sir."

We are bound to take judicial notice of natural laws, and hence we know that at Milford the sun set on the evening of the 13th of December at five o'clock. We further know that in view that the sun passes below the horizon more nearly perpendicularly in winter than in summer twilight is correspondingly shorter in winter than it is in summer. The sun, therefore, had passed below the horizon December 13th for one full hour at six o'clock, two hours at seven o'clock, and two and one-half hours at seven-thirty o'clock. We therefore know that so far as the sun was concerned the darkness of night had set in at six o'clock, and was complete long before seven o'clock, since the sun had passed beneath the horizon fully two hours by that time. If, therefore, the prosecutrix is correct in her statements respecting light and darkness, then the occurrences she testified to must have taken place earlier in the season, just as defendant says they did. Respecting the length of twilight in summer in this latitude, see *Preece* v. *O. S. L. R. Co.*, 48 Utah, 560, 161 Pac. 43. It was therefore impossible that it was merely getting "dusk" at six o'clock, and was not yet dark at seven o'clock on the 13th of December. Such a condition was, however, most natural earlier in the season. According to the state's own evidence, **4, 5** therefore, there was no reason whatever for assailing Mr. Larsen's statements as was done. We have no doubt that both the court and the prosecuting attorney were conscientious in assuming the attitude they did in this matter, but that in no way can relieve us from the duty of reversing judgments of conviction when such convictions are not obtained in accordance with the rules of law and evidence and to the

prejudice of the substantial rights of the defendant in the case. While it is true that much latitude must be allowed to the trial courts in permitting cross-examination of witnesses, and that their rulings in that regard will not be disturbed unless it is made to appear that the discretion with which the law invests them has been abused, yet when it is manifest, as it is here, that the legitimate bounds of cross-examination by the state of its own witnesses have been transcended to the prejudice of the defendant, it would be a reproach to the law, and, to say the least, a reflection upon the administration of justice, if we upheld a conviction thus obtained.

It is next urged that the court erred in refusing to permit the defendant to prove that the general reputation of the prosecutrix for chastity was bad. In other words, that she was reputed to be unchaste in the community where she lived. Defendant's counsel insists that under the authorities such evidence was proper. In view that the defendant denied that he was with the prosecutrix on the night in question, and denied that he had had sexual intercourse with her then or at any time, we cannot conceive how such evidence had any relevancy in this case, except perhaps to affect the credibility of the prosecutrix. It was however, not offered for that purpose, and it is not contended here that it should have been admitted for that purpose. Where the defendant admits the sexual act, but contends that the prosecutrix consented thereto, and where, as here, she is of lawful age, such **6, 7** evidence is relevant and material upon the question of consent. While it is true that even a prostitute may refuse consent to the sexual act, yet, in contemplation of law, a lewd woman is much more likely to consent to such an act than a chaste woman would be; hence evidence that the prosecutrix was generally reputed to be unchaste is relevant for the purpose just stated. The law upon this question is well stated by the Supreme Court of Florida in *Rice* v. *State of Florida*, 35 Fla. 236, 17 South. 286, 48 Am. St. Rep. 245. The court, in discussing the relevancy of such evidence in a case like the one at bar, at pages 239 and 240 of 35 Fla., 17 South. 286, 287 (48 Am. St. Rep. 245), says:

"Considering the line of defense adopted by the defendant, no injury could have been done him by ruling out this testimony. The only purpose for which such testimony was offered was to show a probability of consent on the part of the prosecutrix to the act of the defendant. The defense was not based upon any theory of consent to the act, but upon a denial by the defendant that he had ever had any carnal intercourse whatever with the girl. Therefore the testimony was wholly immaterial, and could not have any reference to the defense made by the defendant. *McDermott* v. *State*, 13 Ohio St. 332 [82 Am. Dec. 444]; *Strang* v. *People*, 24 Mich. 1, text, 7; *People* v. *McLean*, 71 Mich. 309, 38 N. W. 917 [15 Am. St. Rep. 263], and English case cited therein. See, also, 19 Am. and Eng. Ency. of Law, pp. 961, 962; 3 Am. and Eng. Ency. of Law, p. 158, note, and American and English authorities collated; *Wilson* v. *State*, 17 Texas Ct., App. 525, and Texas and other cases collated therein; *Shirwin* v. *People*, 69 Ill. 55; *State* v. *Jefferson*, 6 Ired. [28 N. C.] 305; *State* v. *Fitzsimon* [18 R. I. 236] 27 Atl. 446 [49 Am. St. Rep. 766]."

See, also, 22 R. C. L. page 1208, section 42, where it is said:

"The general rule is that, in prosecutions for rape, evidence of the prior unchastity of the prosecutrix as a substantive defense is inadmissible. Where, however, the defense rests on the fact of consent the character of the prosecutrix for unchastity is competent evidence as bearing on the probability of her consent to the act with which the defendant is charged, and the likelihood of her resisting the advances of any man, on the ground that it is more probable that an unchaste woman assented to such intercourse than one of strict virtue."

A large number of cases, to which it is not necessary to refer, are cited in support of the text quoted.

See, also, *State* v. *McCune*, 16 Utah, 176, 51 Pac. 818, and *Lee* v. *State*, 132 Tenn. 655, 179 S. W. 145, L. R. A. 1916B, 963.

Such evidence is inadmissible, however, in what is generally termed statutory rape, that is, where sexual intercourse is had with a female under the age of consent, for any purpose. See *State* v. *Hilberg*, 22 Utah, 27, 61 Pac. 215, and *State* v. *Williamson*, 22 Utah, 248, 62 Pac. 1022, 83 Am. St. Rep. 780. While it is true that it is said in *State* v. *McCune*, supra, that such evidence is proper to affect the credibility of the prosecutrix, yet, as pointed out before, that question is not presented in this case, and hence we express no opinion upon it.

During the progress of the trial defendant's counsel was permitted to interrogate the prosecutrix with regard to whether she had had sexual intercourse with a certain individual, naming him, and whether she did not believe that she was pregnant as a result of that intercourse. She admitted that when she lodged the complaint against the defendant on the 15th of January, 1918, she believed she was pregnant, but insisted that if she was the pregnancy was the result of the defendant's forcible intercourse with her. She also frankly conceded that she was mistaken with regard to that matter, and that she was not pregnant at any time. It should also be stated here that the prosecuting attorney, in his examination in chief, proved by the prosecutrix that she at no time had had sexual intercourse with any one except with the defendant, and with him only once, namely, on the night in question. In ruling upon defendant's attempts to prove on cross-examination of the prosecutrix that she had had sexual intercourse with the individual before referred to, the court repeatedly announced that it would be proper for the defendant to show on cross-examination of the prosecutrix that she had had sexual intercourse with others than the defendant, but if the prosecutrix denied such intercourse the court would not permit the defendant to contradict her or to prove the fact otherwise than by her admissions. In this regard the court was in error. The authorities are very numerous, indeed the great weight of authority is to the effect, that the prosecutrix cannot be interrogated on cross-examination as to whether she had had sexual intercourse with others than the defendant. The doctrine is based upon the fact, and the great weight of authority is to the effect, that specific acts of intercourse with others than the defendant may not be shown. If it is desired to prove that the prosecutrix is a lewd woman, that may only. be done by attacking her general reputation for chastity and morality, and not by showing specific acts of wrongdoing. The rule is well and clearly stated in the case of the *State* v. *Ogden*, 39 Or. 195, 65 Pac. 449. In the course of the opinion, after stating that some courts have admitted specific acts of intercourse, it is said:

"The great weight of authority, however, is opposed to this view, and supports the proposition that evidence of specific acts of unchastity on the part of the prosecutrix with others than the defendant is inadmissible."

A large number of cases in support of the text are cited, to which we shall not refer here. As a matter of course, if the prosecutrix has had intercourse with the de- **9-11** fendant at other times than the one in question, that fact may ordinarily be shown. It was the theory of counsel for the defendant, however, that the prosecutrix in this case had had intercourse with the individual heretofore referred to; that she tried, but was unable, to see such individual, and that for that reason and in order to shield herself in view of her supposed pregnancy she wrongfully charged the defendant with the offense. No doubt if such were the case the defendant would have the right to prove by her on cross-examination, if he could, that such was her purpose in lodging the complaint against the defendant, and, in order to establish the fact, he no doubt would be permitted to prove that she had had intercourse with the individual aforesaid. Under such circumstances it is always proper to show the motives of the prosecuting witness, and, if such be the fact, that she is wrongfully accusing the defendant either to shield herself or to shield another. 33 Cyc. 1454, 1455; *Shoemaker* v. *State,* 58 Tex. Cr. R. 518, 126 S. W. 887.

It is next contended that the court erred in permitting the prosecuting attorney to cross-examine the defendant with respect to his obtaining a divorce from his first **12, 13** wife, and when he obtained it. We think the contention is well founded. The cross-examination in that regard was very prejudicial to the defendant, in that it was thereby intimated that he had commenced keeping company with his present wife before he had obtained a divorce from his first wife. That was not a matter of legitimate cross-examination. It was entirely collateral to any issue in the case. It is true that collateral facts may very often be shown on cross-examination to affect the credibility of the defendant, and it is also true that such matters are largely within the sound discretion of the trial courts. There must, however, be a limit to the

introduction of evidence respecting collateral matters. No
hard and fast rule can be promulgated which can be enforced
in every case. Each case, to a large extent, must depend upon
its own circumstances, and trial courts should be very careful
not to transcend the bounds of legitimate cross-examination
in that regard. While under certain circumstances such evi-
dence may be quite important and proper, and while in other
cases the courts may have gone too far and yet no prejudice
may have resulted, such is not the case here. Here the col-
lateral matters respecting the defendant's divorce were clearly
improper, and were necessarily prejudicial to his rights. For
a discussion of what is and what is not legitimate cross-exam-
ination of one accused of crime respecting callateral matters,
see *State* v. *Thorne,* 39 Utah, 208, 117 Pac. 58; *State* v. *Vance,*
38 Utah, 1, 110 Pac. 434.

In this connection and in view that the case must be re-
manded for a new trial, we feel constrained to add that the
cross-examination of the defendant was improper upon an-
other point. The defendant upon his examination in chief de-
nied the intercourse, and denied that he was with the prosecu-
trix on the occasion testified to by her, and fully explained
where he was during all of the time testified to by her and
what he did. His statements in that regard were fully corro-
borated by other witnesses. In cross-examining the defendant,
however, the prosecuting attorney repeated all that was testi-
fied to by the prosecutrix by asking numerous questions, in
each one of which some fact or facts stated by her were in-
cluded. In many of these questions the prosecuting attorney
also placed his own construction on what the prosecutrix had
testified to. Such a method of cross-examination is not
only very improper, but it is quite unfair in that by
that means what the prosecutrix testified to is con-
stantly kept before the jury. By pursuing such a method the
cross-examiner is permitted to repeat over and over again the
testimony of his witnesses, or some of them, which he would
not be permitted to do in any other way. He would not have
been permitted to recall the prosecutrix and have her repeat
all that she had testified to in order to impress the jury with

the importance of her testimony, yet that, in effect, is precisely what was done in this case. Indeed, the method pursued was more objectionable, if possible, than the one just suggested, for the reason that the defendant on cross-examination of the witness might perhaps have shown that she in some particulars was not adhering strictly to her former statements. The court, in order to protect the rights of the accused who is on trial, should on his own initiative prevent counsel on either side from pursuing such a course on cross-examination.

Another assignment assails the ruling of the court in stating its reason why it did not require a certain witness for the defense to answer a certain question on cross-examination. The defendant produced a witness who testified that the general reputation of the prosecutrix for truth and veracity was bad. The prosecuting attorney on cross-examination asked this question: "What is your reputation in the community where you reside for truth and veracity?" Defendant's counsel objected to the question as not proper cross-examination. The court, in ruling on the question, said:

"There is no question in the mind of the court but what you can investigate the character of the witness for truth and veracity, but I don't think he is required to convict or incriminate himself. For that reason the objection is sustained."

The objection should have been sustained for the reason urged by defendant's counsel. The subject to which the witness testified was the reputation of the prosecutrix. His own reputation was about as foreign to hers as two subjects could well be. True, the state had the right to impeach the witness by showing that his general reputation for truth and veracity was bad, or could have assailed his credibility by the usual methods, but it could not do that in the manner attempted. Moreover, the reason given by the court was erroneous. It, to say the least, would be somewhat disconcerting, if not humiliating, to a witness, when called to testify concerning the general reputation of a certain witness, and after having done so, to be told that he need not answer a question put to him on cross-examination concerning his own reputation for the reason that it might be self-incrimin-

Appeal from Fifth District.

ating. It would be far better for the witness if he were permitted to answer the question, although very improper. It requires no argument to show that to pursue such a course must necessarily destroy the whole effect of the impeaching testimony, and in view of all the circumstances of this case was prejudicial to the rights of the defendant.

It is next insisted that the court erred in charging the jury. The court, among other instructions, gave the following:

"*The court instructs the jury that it is their province to determine the weight and credibility to be given the testimony of a female upon whom it is alleged in an information that a rape has been committed, and who testifies to the facts and circumstances of such rape as of any other witness testifying in the case.* And if such testimony creates in the mind of the jury a satisfactory conviction and belief beyond a reasonable doubt of the defendant's guilt, it is sufficient of itself, without other corroborating circumstances or evidence, to justify a verdict of guilty of rape upon the trial of the case."

The defendant excepted to this instruction, and particularly excepted to that portion which we have italicized. We are of the opinion that the exception is well founded. This precise question was before the Supreme Court of Missouri in *State* v. *Sykes*, 191 Mo. 62, 89 S. W. 851. The defendant in that case, as here, was charged with rape, and an instruction similar to the one in question here was given. The court, in passing upon the instruction, among other things, said:

"The instruction, on first reading, and taken alone, would seem to be misleading, in that it tells the jury that the prosecuting witness had no interest in the case whatever other than that of a witness, *and that her testimony is to be weighed exactly like that of any other witness in the case.*" (Italics ours.)

It is then pointed out that the prosecutrix necessarily has a greater interest in the result of the case than a disinterested witness would have, and that the jury should be instructed to consider and weigh her testimony with that fact in mind. Indeed, it should require no argument to show that the prosecutrix, under circumstances like those disclosed by this record, is vitally interested in the result of the case. Her future reputation to a large extent may be affected by the result, say nothing about the fact that she has a vital interest in vindi-

cating herself and the attitude she has assumed respecting the
prosecution.   The jury should therefore be plainly
told that they should consider and weigh the testi-      **18**
mony of the prosecutrix in view of her interest in the
result and also in connection with and in the light of all the
other evidence in the case, including all the' facts and circum-
stances as they appear from the evidence, and if after consid-
ering and weighing her testimony in the light aforesaid they
are satisfied beyond a reasonable doubt and have an abiding
conviction that all of the elements of the crime charged
against the defendant have been thus established, they may
find him guilty upon her testimony alone.   In this jurisdic-
tion, where no corroboration of the statements of the prose-
cutrix is necessary to convict, it is of the utmost importance
that the jury be carefully instructed with regard to how her
testimony should be considered and weighed; and that is es-
pecially true where, as here, her testimony stands practically
alone, and must be taken as against what, judging from the
record, seems to us to be strong countervailing evidence.   If
such a course is not followed a shrewd and designing woman
of mature years, by selecting her own time and place, may
easily ruin any man, and he may be utterly helpless to pre-
vent it.   In *State* v. *Sykes,* supra, the court had, however,
sufficiently informed the jury in another instruction respect-
ing the interest of the prosecutrix, and in what light her tes-
timony should be considered and weighed, and for that reason
the judgment was not reversed in that case.   This is, however,
not the case here.   In this connection we suggest, however,
that it would be better to include the whole question in one
instruction.

Finally, it is contended that the judgment should be re-
versed upon the ground of misconduct on the part of the pros-
ecuting attorney in making the closing argument to the jury.
In the bill of exceptions it is made to appear that in his clos-
ing argument the prosecuting attorney told the jury that it
was against the law to impeach the defendant for truth and
veracity until he himself had first put his reputation in issue.
Defendant's counsel excepted to the statement, and asked the

court to instruct the jury to disregard it, but the court did not do so. By the statement of the prosecuting attorney it is clearly implied that the only reason why the defendant was not impeached was because he did not put his own reputation for truth and veracity in issue. Of course such is not the law, and in view of the circumstances of this case the statement was very prejudicial to the rights of the defendant. This court has always adhered to the rule that much latitude must be allowed counsel in making statements during the progress of a trial and in their arguments to the jury, yet where, as here, the liberty of a citizen is involved, and where, as here, that liberty practically depends upon the statements of one witness as against the statements of others, we cannot ignore the question. The statement as disclosed by the bill of exceptions is not denied or even questioned, and hence we must assume it to be true. The only caution that was given to the jury by the court during the trial related to colloquies between counsel, at which time the court told the jury not to pay any attention to what counsel said, but to confine their deliberations to the evidence alone. It is now contended that that caution was sufficient to meet the objection of defendant's counsel. Under the circumstances of this case, however, we are of the opinion that it was not, and that the statement was prejudicial to the substantial rights of the defendant.

There are a number of other assignments argued, but none is sufficient to require special consideration. Neither is it necessary to pass upon the ruling of the court in denying the motion for a new trial upon the ground of newly discovered evidence. Any proper evidence may be introduced if the case is retried.

For the reasons stated, the judgment is reversed, and the cause is remanded to the district court of Beaver county, with directions to grant defendant a new trial.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.