STATE of Utah, Plaintiff and
Respondent,

v.

Randolph A. SMITH, Defendant
and Appellant.

No. 17780.

Supreme Court of Utah.

Nov. 8, 1983.

Jo Carol Nesset-Sale, of Salt Lake Legal Defender Ass'n, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Robert N. Parrish, Asst. Atty. Gen., Salt Lake City, Utah, for plaintiff and respondent.

STEWART, Justice:

The defendant, Randolph A. Smith, was tried and convicted of second degree murder. On appeal he raises four issues. He argues that (1) the trial court erroneously reserved its decision on defendant's motion for a directed verdict at the close of the State's evidence; (2) the trial court erred in denying defendant's motion for a directed verdict at the close of all evidence on the charge of murder based on depraved indifference to human life; (3) the prosecutor improperly impeached defendant; and (4) the prosecutor improperly argued the appli-

cable law of the case to the jury during the final argument.

On December 12, 1980, at about 1:30 a.m., defendant and two of his friends were in a van traveling on State Street in Salt Lake City. They had previously consumed two pitchers and three six-packs of beer between them. As they traveled along, they encountered a car driven by Scott Freeman, and occupied by his brother Mark Freeman (the victim), and the Freemans' cousin, Ricky Thomas. The two groups exchanged some unfriendly words; both vehicles turned off State Street onto a side street; and both groups left their vehicles. A fight appeared imminent.

Defendant and Mark Freeman encountered each other first. Holding a gun and pointing it at Mark, defendant backed Mark against a wall. A moment later Mark was joined by Scott, and defendant pointed his gun at both of them. A verbal exchange ensued after which defendant shot and killed Mark Freeman.

Defendant was arrested and charged with second degree murder under subsections (a), (b) and (c) of U.C.A., 1953, § 76–5–203 (Supp.1981), Utah's second degree murder statute.[1] At trial, the State's evidence showed that the shooting was intentional. Scott Freeman testified that after he joined Mark, the defendant ordered Mark down on his knees. Mark refused and stated that "he wasn't getting down for nobody." Then, according to Scott Freeman, defendant stated:

A "I'll blow your ... head off, then."

Q And then what happened?

A He pulled the trigger.

At the close of State's evidence, defense counsel moved for a directed verdict on the charge under subsection (c) of § 76–5–203. That subsection states that criminal homicide constitutes second-degree murder when:

(c) Acting under circumstances evidencing a depraved indifference to human life, [the actor] engaged in conduct which creates a grave risk of death to another and thereby causes the death of another.

In moving for a directed verdict, defendant argued that although the State's evidence was sufficient to submit the case to the jury under subsections (a) and (b), it was not sufficient to submit the case under subsection (c). He contended that subsection (c) does not expressly require an intent to kill or cause serious injury, whereas subsections (a) and (b) of § 76–5–203 require either an intent to kill or an intent to cause serious injury. The trial judge declined to rule on the motion for a directed verdict with respect to subsection (c) and reserved its decision on the motion until later.

Defendant claimed he shot in self defense. Defendant testified that he aimed the gun directly at Mark, and said, "Don't make any fast moves"; that he ordered Mark on his knees in order to search him for weapons; and that, instead of kneeling, Mark made a fast hand movement to his chest as if reaching for a weapon. The claim is that the defendant shot "to cause serious bodily injury to stop the action that he (Mark) started."

At the close of all evidence, the trial court denied the motion for a directed verdict on subsection (c), and the case was submitted to the jury on instructions § 76–5–203(a), (b), and (c) as charged.

I.

Defendant's first assertion of error on appeal is that the trial judge erred in re-

---

1. Section 76–5–203 provides that a criminal homicide constitutes second degree murder if the actor:

(a) Intentionally or knowingly causes the death of another; or

(b) Intending to cause serious bodily injury to another, he commits an act clearly danger-ous to human life that causes the death of another; or

(c) Acting under circumstances evidencing a depraved indifference to human life, he engaged in conduct which creates a grave risk of death to another and thereby causes the death of another.

serving its decision on the motion for a directed verdict under subsection (c). The argument is that the trial judge should rule on a motion for a directed verdict made at the close of the State's evidence so that the defendant is not forced to adduce evidence in defense of a charge that the State has not proved, with the possible risk that the defendant's evidence may fill some unfilled gaps in the State's case.

■ Motions for directed verdicts in criminal proceedings are governed by U.C.A., 1953, § 77–17–3 and Rule 17(o) of the Utah Rules of Criminal Procedure (U.C.A., 1953, § 77–35–17(o)). Section 77–17–3 requires the immediate discharge of a defendant when there is not sufficient evidence to put him to his defense:

> When it appears to the court that there is not sufficient evidence to put a defendant to his defense, it shall forthwith order him discharged.

This section is founded on the basic concept that a defendant need not adduce any evidence in his defense unless the prosecution first adduces believable evidence of all the elements of the crime charged. Only then should the defendant be put to his proof.

Rule 17(o) of the Utah Rules of Criminal Procedure is not inconsistent with § 77–17–3. Rule 17(o) authorizes the dismissal of an entire information or indictment, or any count thereof, either at the end of State's evidence or at the close of all the evidence:

> At the conclusion of the evidence by the prosecution, or at the conclusion of all of the evidence, the court may issue an order dismissing any information or indictment, or any count thereof, upon the ground that the evidence is not legally sufficient to establish the offense charged therein or any lesser included offense.

■ Rule 17(o) merely recites the traditional rule that a trial judge may dismiss an information or indictment, or any count of an information or indictment, either at the close of the State's evidence or at the conclusion of all evidence. If the State's evidence at the close of its case in chief does not establish a prima facie case against defendant, the Court must, as required by Rule 17(o), dismiss the charge. The trial court upon proper motion must also determine at the close of all evidence whether reasonable minds could find all the elements of the crime charged in favor of the State.

■ Section 77–17–3 clearly entitles the defendant to an immediate ruling on the sufficiency of the prosecution's case at the close of its case. The trial judge should at that time "rule promptly upon such a motion so that the defendant may decide whether or not to proceed with the introduction of evidence in his defense." *United States v. Brown*, 456 F.2d 293, 294 (2nd Cir.1972). The purpose of the rule is to "avoid forcing a defendant into going forward with his own evidence when the state's case is insufficient." *State v. Tucker*, 26 Ariz.App. 376, 378, 548 P.2d 1188, 1190 (1976). *See also Jackson v. United States*, 250 F.2d 897 (5th Cir.1958); *Bennett v. People*, 155 Colo. 101, 392 P.2d 657 (1964).

■ In the instant case, the trial court reserved its decision until after the defendant presented his evidence, and then denied the motion. We think that the defendant was entitled to a ruling before he commenced his own case in chief, and it was error for the trial court to have refused to rule promptly. Nevertheless, the error was harmless because the State had undeniably made out a prima facie case of second degree murder at the close of its case in chief.

II.

Defendant next contends that the trial court committed prejudicial error by instructing the jury under the depraved indifference charge. The specific contention is that there was no evidence to support the charge because all the evidence showed that the shooting was intentional, and therefore the instruction was prejudicial because the jury may not have considered the instruction on self-defense with respect to the depraved indifference charge. However, the defendant makes no contention that subsection (c) does not require an in-

tentional and/or knowing mens rea—a point we do not therefore address in this case.

This Court has previously sustained an instruction under § 76-5-203(1)(c) where, as in this case, defendant pointed a gun directly at the victim and shot him. *State v. Minnish*, Utah, 560 P.2d 340 (1977). However, even if we assume *arguendo* that the trial court erred in submitting the depraved indifference instruction to the jury, we fail to perceive how that instruction could have prejudiced the jury.

■ As in *State v. Minnish, supra*, the trial court's instruction in the instant case on depraved indifference was "verbatim of the code provision pertaining to second-degree murder." *Id.* at 341. A separate instruction defined "depraved indifference to human life" to mean conduct which "exhibits contempt and indifference to human life."

Defendant offers no explanation as to how the depraved indifference instruction might have prejudiced the theory of self-defense. He simply makes the bald assertion that it did. Certainly, the instructions do not suggest that self-defense is not a defense to a charge of depraved indifference. Although the issue of whether self-defense is a defense to a charge of murder based on depraved indifference has not been decided by any case cited to us, or any case we have found, we note that it is not uncommon for a self-defense instruction to be given to a "depraved indifference" charge. *See, e.g., Weber v. State*, 457 A.2d 674 (Del. Supr.1983); *State v. Palomarez*, 134 Ariz. 486, 657 P.2d 899 (Ariz.App.1982); *State v. Skjonsby*, N.D., 319 N.W.2d 764 (1982); *State v. Maselli*, 182 Conn. 66, 437 A.2d 836 (1980); *State v. Bishop*, 49 Or.App. 1023, 621 P.2d 1196 (1980); *Thomas v. State*, 266 Ark. 162, 583 S.W.2d 32 (1979).

The self-defense instructions on their face applied to all three subsections, (a), (b), and (c), of § 76-5-203. The defendant could only have been helped by those instructions, not hurt. On the issues raised, we fail to see any prejudicial error in the instructions given.

### III.

Defendant also asserts that the prosecution improperly attempted to impeach the defendant. Before trial, the trial court entered an order prohibiting the prosecutor from attempting to impeach the defendant by questioning him about a prior misdemeanor conviction for carrying a concealed weapon. At trial, the prosecutor nevertheless attempted to impeach the defendant on that point:

A: ... And if you carefully read over the statement that you'll find out several times that my train of thought is jumbled up in there.

Q: What is your train of thought?

A: Well, you have to figure like this. The police have just picked you up for killing someone. You've never been booked on a serious charge such as that. So, when I was arrested I was literally in a state of shock.

Q: It's your testimony you've never been booked on a serious charge before?

A: I have—I have a misdemeanor on my record right now. That's about it.

Q: What's that misdemeanor for?

[Defense counsel:] Objection. Objection.

THE COURT: Sustained.

■ The prosecutor's pursuit of the prior booking comment by the defendant and his further inquiry into the basis of the misdemeanor conviction clearly violated the trial court's order. Even though the defendant volunteered the statement that he had "never been booked on a serious charge," the prosecutor was, nevertheless, bound by the court's order not to question the defendant concerning the misdemeanor conviction without obtaining relief from the order. However, the trial judge cut short the questioning as to the nature of the misdemeanor before any prejudice occurred. It would be too long a reach to conclude that this interchange could have affected the outcome of the trial and was therefore reversible error. U.C.A., 1953, § 77-35-30; *State v. Watts*, Utah, 639 P.2d 158 (1981).

Defendant also argues that the prosecutor improperly sought to impeach defense

witness Robert Parren, one of defendant's two friends in the van and an eyewitness to the shooting. On cross examination, the prosecutor asked Parren if he had been charged with obstruction of justice in connection with the present case. Although Parren replied in the affirmative, he was mistaken in his answer. Later testimony established that he had not been charged.

 It is not proper to impeach a witness by evidence of prior arrests, indictments, accusations, or prosecutions. *State v. Huggins*, 18 Utah 2d 219, 418 P.2d 978 (1966); *State v. Dickson*, 12 Utah 2d 8, 361 P.2d 412 (1961); *State v. Johnson*, 76 Utah 84, 287 P. 909 (1930) (dicta). *See also* 3A J. Wigmore, *Evidence* § 980a (Chadbourn rev. 1970); Annot., 20 A.L.R.2d 1421 (1951). There is no basis for an exception to the rule in this case, such as attempting to disclose the bias of a co-indictee in the outcome of the case. *See* 3A J. Wigmore, *supra*, §§ 966, 967. Nevertheless, under the circumstances, the question, improper as it was, was not prejudicial.[2]

### IV.

Finally, defendant contends that the prosecutor transgressed the boundaries of what may be argued in a closing argument. During defense counsel's closing argument, she gave three "examples" of situations she asserted would meet the requirement of "depraved indifference."[3] In response, the prosecutor stated:

With respect to the remarks about depraved indifference and the cases that [defense counsel] mentioned to you, .... [t]he law doesn't require, ... that this case be as horrible as those cases .... [T]here are also a lot of legal cases where—depraved indifference cases which are just like this one.

Defendant argues that these remarks were improper and prejudicial because the prosecutor represented what the law controlling this case was.

 The law in Utah is that counsel may not argue what the legal principles should be that the jury should apply.[1] It is the prerogative of the court, not counsel, to instruct the jury as to the applicable law. In *State v. Hanna*, 81 Utah 583, 594, 21 P.2d 537, 541 (1933), this Court stated: "The jury must receive the law from the court and counsel's arguments in respect to the law must be within the principles given by the court in its instructions." *See also State v. Scott*, 55 Utah 553, 188 P. 860 (1920); *State v. Neel*, 23 Utah 541, 65 P. 494 (1901). Counsel may, of course, argue whether the law as stated in the instructions applies to the particular facts of the case, but not what the legal elements of the crime charged are.

 The State argues that the remarks were permissible as a response to defense counsel's arguments suggesting hypothetical instances of depraved conduct. Improper remarks of defense counsel in closing argument do not justify improper, retaliatory statements by the prosecution. The proper course is to object to the im-

2. Parren's testimony was the same as defendant's: that defendant pointed his gun at the victim, and told the victim not to make any fast moves; that the victim made a fast hand movement to his chest, whereupon the defendant shot and killed the victim.

3. Defense counsel stated:
Depraved indifference. What is depraved indifference? I should think that some examples which seem to meet the requirements of depraved indifference might help you put that in perspective in relationship to the facts in this case. Certainly you would find a depraved indifference to human life if a mother allowed her child to starve to death....

If a person stands at the top of a tower, shoots at all of the persons who are scurrying below who begin to run for cover after he has fired a first shot at persons he doesn't even know, persons he's had no contact with, surely you would understand that in that circumstance that person is indicating a depraved indifference, a contempt for all human life.

If a driver goes down Main Street at 80 miles an hour on the sidewalk on a Saturday afternoon when the sidewalk is full of people, not caring if he runs over people and kills them, certainly that is depraved indifference.

4. Some states recognize the right to argue to the jury what the law should be, and some deem it a privilege to be granted or withheld in the trial court's discretion. 75 Am.Jur.2d *Trial*, § 277 (1974); Annot., *Counsel's right in criminal prosecution to argue law or to read law books to the jury*, 67 A.L.R.2d 245 (1959).

proper argument and request a clarifying instruction if necessary. An improper argument by defense counsel, however, may be considered a mitigating factor in determining the extent of any prejudice that may have occurred. *E.g., State v. Eagle,* Utah, 611 P.2d 1211 (1980); *State v. Valdez,* 30 Utah 2d 54, 513 P.2d 422 (1973); *People v. Perry,* 7 Cal.3d 756, 103 Cal.Rptr. 161, 499 P.2d 129 (1972); 75 Am.Jur.2d *Trial* § 233 (1974).

In the present case defense counsel's remarks were not misleading; she posed them as "examples," not as decided cases binding in this or other jurisdictions. The prosecutor's argument, however, intruded into the trial judge's domain. Although the argument was improper, it was clearly harmless. Defendant does not contend, and the record does not suggest, that the prosecutor's brief comments on the law of depraved indifference misled the jury or affected its decision.

Affirmed.

HALL, C.J., and OAKS, HOWE and DURHAM, JJ.