**STATE of Utah, Plaintiff and Respondent,**

v.

**Erlene Kay STRIEBY, Defendant and Appellant.**

**No. 890124–CA.**

Court of Appeals of Utah.

March 30, 1990.

11. *Cf. Reeves*, 764 P.2d at 642.

Neil A. Kaplan (argued) and Anneli R. Smith, Clyde, Pratt & Snow, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, State Atty. Gen. and Charlene Barlow (argued), Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

Before BENCH, GREENWOOD and JACKSON, JJ.

## OPINION

GREENWOOD, Judge:

Defendant Erlene Kay Strieby was convicted of manslaughter, a second degree felony, pursuant to Utah Code Ann. § 76-5-205 (Supp.1989). She appeals her conviction, claiming that the evidence presented at trial was insufficient to justify a conviction of manslaughter. We reverse.

On July 8, 1988, defendant shot her husband, Chris Strieby, while both were in their condominium in Tooele, Utah. On the morning of that same day, defendant and Chris argued briefly while at Chris's father's welding shop. Defendant then drove to The Eagle's, a local club, where she consumed several alcoholic drinks.

Later in the afternoon, defendant went to Chris's father's trailer, which was parked alongside the welding shop, to take Chris home. He had consumed between one-third and one-half of a fifth of vodka. They began arguing again. Defendant tried to slap Chris's face. He grabbed her shirt, pinned her to the floor, and held her there by the neck for a few minutes while she struggled. After he released her, defendant called her friend, Charlotte Gourley, who came to the trailer and took defendant to the Striebys' condominium. Defendant then sent Joseph Gruenwald and Kenneth Taylor, young men temporarily living with the Striebys, to pick Chris up. The young men dropped him off outside the condominium and immediately left for Salt Lake City.

Defendant's version of what occurred at the condominium is as follows. When Chris entered the condominium, he physically attacked defendant and threatened to kill her. He told defendant, "I am going to kill you, you bitch. You don't deserve to live." She attempted to leave by the front door, but he slammed the door shut. They then scuffled in the entryway and defendant ran upstairs. Chris pursued her and caught her on the landing, where he grabbed her leg, pulled her to the floor, and dragged her down the stairs on her back. He attempted to strike her with his fist while she was still lying on the stairs. She evaded the strike and kicked him away with her foot. He then went into the kitchen. At this point, defendant ran upstairs to their bedroom, took a .357 magnum from its holster in the closet, and returned to the top of the stairs. Chris was ascending the stairs, shouting threats and obscenities. When he reached the landing and was starting up the second flight, defendant told him to leave. She pled with him to give her a couple days to pack her belongings and leave, but he continued to verbally threaten to kill her. Defendant then fired a single round, which entered Chris's mouth and lodged in the second cervical vertebrae, instantly killing him.

Defendant was charged with second degree murder. At trial, she argued that she acted in self-defense. Although the judge stated that he had no substantial reason to doubt defendant's testimony that she feared for her life, he convicted her of manslaughter after a bench trial.

On appeal, defendant argues that the trial court erred in: (1) finding the evidence sufficient to make a prima facie case of manslaughter at the close of the State's case in chief; (2) finding evidence sufficient to convict her of manslaughter; and (3) ordering restitution. Since we conclude that there was insufficient evidence to prove guilt beyond a reasonable doubt, we do not reach defendant's claim of an improper restitution order.

## INSUFFICIENCY OF EVIDENCE

When reviewing challenges to the sufficiency of evidence from a bench trial conviction, we note that

> the content of Rule 52(a)'s "clearly erroneous" standard, imported from the federal rule, requires that if the findings (or the trial court's verdict in a criminal case) are against the clear weight of the evidence, or if the appellate court otherwise reaches a definite and firm conviction that a mistake has been made, the findings (or verdict) will be set aside.

*State v. Walker,* 743 P.2d 191, 193 (Utah 1987); *see also State v. Mitchell,* 769 P.2d 817, 818 (Utah 1989). This standard of review is less deferential than that applied in a jury trial because of the multi-member versus single fact finder, and requires that the evidence presented not be contrary to the verdict. *State v. Goodman,* 763 P.2d 786, 786–787 (Utah 1988).

### 1. Prima Facie Case

A person commits manslaughter when she or he:

(a) recklessly causes the death of another; or

(b) causes the death of another under the influence of extreme emotional disturbance for which there is a reasonable explanation or excuse; or

(c) causes the death of another under circumstances where the actor reasonably believes the circumstances provide a legal justification or excuse for his conduct although the conduct is not legally justifiable or excusable under the existing circumstances.

Utah Code Ann. § 76–5–205 (Supp.1989).

Defendant asserts that because the State failed to prove the elements of manslaughter during its case in chief, the court should have granted defendant's motion for judgment of acquittal. She argues that the State was required to, but did not prove the absence of self-defense, and thus failed to prove the elements of manslaughter. We disagree.

■ The interplay between Utah Code Ann. § 77–17–3 (1982) and rule 17(*o*) of the Utah Rules of Criminal Procedure (Utah Code Ann. § 77–35–17(*o*) (1982)) requires a trial judge to grant a motion for judgment of acquittal when the prosecution fails to present enough believable evidence to put the defendant to her defense. *State v. Smith,* 675 P.2d 521, 524 (Utah 1983). The State is required to show some evidence of every element of its cause of action, or a lesser included offense, to avoid an unfavorable directed verdict at the close of its case in chief. However, the State is not required to prove a dearth of self defense as one of those elements. The Utah Supreme Court has specifically held that an "[a]bsence of self-defense is not one of the prima facie elements of homicide." *State v. Knoll,* 712 P.2d 211, 214 (Utah 1985).[1]

We find at the close of the State's case in chief, there was enough evidence to set forth all of the statutory elements of manslaughter. Defendant admitted to causing the death of Chris Strieby, and at this point in the proceeding, the evidence presented did not legally justify her actions. We find the State's evidence sufficient to establish the prima facie elements of manslaughter and require defendant to proceed.

### 2. Verdict

Defendant next argues that she is not guilty of manslaughter because she was justified in shooting Chris under Utah Code Ann. § 76–2–402 (1978) which states:

> [A] person is justified in using force which is intended or likely to cause death or serious bodily injury only if he reasonably believes that the force is necessary to prevent death or serious bodily injury to himself or a third person, or to prevent the commission of a forcible felony.

■ Defendant maintains that Chris's violent physical attack, coupled with his threats to kill her, led her to believe that force was necessary to protect herself from death or serious bodily injury. She testi-

---

1. The court stated, "Self defense is a justification for a killing and a defense to prosecution." Forcing the prosecution to prove the absence of self defense would force it to prove a negative, a burden which the law typically does not impose. *Knoll,* 712 P.2d at 214.

fied that Chris's rage and violence escalated beyond anything she had previously experienced with him. The trial judge apparently believed defendant's story. He specifically found that upon arriving at the condominium, Chris physically attacked defendant, and that given Chris's "powerful, muscular build," there was "no substantial doubt about the reality" of her fear for her life.

Defendant's account was corroborated by the testimony of Dr. Mark Vernon Anderson, who treated defendant in the Tooele Valley Hospital emergency room after the incident on July 9, 1988. Dr. Anderson diagnosed a ruptured disc in defendant's neck, a fresh rug burn on her left elbow, and a hand shaped bruise on her left upper arm. She also had a swollen left eye, a cut on her forehead, and a red mark on the front of her neck. At trial, Dr. Anderson testified that the ruptured disc and the rug burn were probably caused by defendant being dragged down the stairs. He also noted that defendant's medical history included four previous back surgeries and neck problems. He opined that being dragged down the stairs put her at a much higher risk of serious injury than a person with a "normal" healthy back. Defendant testified that Chris was aware of her back problems.

Despite this evidence and his own findings, the trial judge concluded that defendant did not act in self-defense because (1) defendant was "quicker and more agile given their relative levels of intoxication," and (2) the presence of a blue plastic cup on the landing indicated there had been a "reasonable, substantial cessation" in hostilities.

There is little, if any, evidence in the record to support the trial judge's conclusion that Chris's coordination was impaired by alcohol to the extent that he was not a serious threat to defendant. The autopsy report showed Chris had a .25 blood alcohol content. Dr. Edwin Steven Sweeney, State Medical Examiner, examined the body on July 9, 1988. He testified that a .25 blood alcohol content would strongly affect self control and judgment, and might affect coordination, but to a lesser extent. Fur-

ther, defendant testified Chris prevented her from fleeing out the front door and caught her as she first ran upstairs to the landing. Finally, defendant's actual injuries illustrate that Chris was fully capable of seriously harming defendant.

The trial court inferred from the presence of a blue plastic cup on the landing that Chris stopped to fix a drink in the kitchen. The court agreed with the prosecution that Chris went into the kitchen and poured something to drink before following defendant upstairs. This conclusion is not supported by any evidence in the trial record; it is merely the prosecution's supposition. A court may not " 'make speculative leap[s] across ... remaining gap[s]' in the evidence.... Every element of the crime charged must be proven beyond a reasonable doubt" or the verdict must fail. *State v. Harman*, 767 P.2d 567, 568 (Utah App.1989) (quoting *State v. Petree*, 659 P.2d 443, 445 (Utah 1983)). The State must also prove the absence of self-defense after it is properly raised. It is not the defendant's burden to "establish a defense of self-defense beyond a reasonable doubt, or even by a preponderance of the evidence." *Knoll*, 712 P.2d at 214.

All the evidence other than the blue cup indicates that defendant reasonably believed herself to be in imminent danger of serious injury or death and that she had, indeed, already suffered serious injury. The trial court did not doubt her credibility, but nevertheless engaged in pure speculation about a cessation of hostilities. While the trial court's conclusions should be respected, the conviction may not oppose the weight of the evidence. *Goodman*, 763 P.2d at 787. We find the court's guilty verdict contrary to the clear weight of the evidence and, as a result, that the State failed to prove the elements of manslaughter beyond a reasonable doubt.

Reversed.

JACKSON, J., concurs.

BENCH, Judge (concurring and dissenting):

I fully concur in the main opinion's conclusion that the State presented sufficient

evidence to establish a prima facie case of manslaughter. I dissent from the conclusion that the guilty verdict is contrary to the clear weight of the evidence.

The main opinion correctly sets forth our standard of review. In order to upset the trial court's verdict, we must hold that the court's findings are "clearly erroneous." *See State v. Walker,* 743 P.2d 191, 193 (Utah 1987). Although perhaps less deferential than the standard applied in jury trials, we should regard the findings as accurate unless the evidence clearly shows they are in error. *See generally Sweeney Land Company v. Kimball,* 786 P.2d 760 (Utah 1990). Determinations regarding credibility especially are left to the trial court. *Id.; see also State v. Wright,* 744 P.2d 315, 317 (Utah Ct.App.1987).

Utah Code Ann. § 76–2–402(1) (1978) provides that:

A person is justified in threatening or using force against another when and to the extent that he reasonably believes that such force is necessary to defend himself ... against such other's imminent use of unlawful force; however, a person is justified in using force which is intended or likely to cause death or serious bodily injury only if he reasonably believes that the force is necessary to prevent death or serious bodily injury to himself....

Defendant was therefore justified in using deadly force only if (1) she was subject to imminent attack, and (2) she reasonably believed that deadly force was necessary to prevent death or serious bodily injury to herself.

The trial court concluded that defendant did not act in self-defense because there was a "reasonable, substantial cessation" in the hostilities when Mr. Strieby went into the kitchen to pour himself a drink. In reversing this case, my colleagues state

that this finding "is not supported by any evidence in the trial record; it is merely the prosecution's supposition." Yet defendant herself testified that, during the fight on the stairs, "I kicked him in the groin. I pushed him, and he went into the kitchen." Whether he fixed a drink or not, I believe the evidence supports the trial court's finding regarding cessation of hostilities. At that point, given her relative level of intoxication (another factual finding), defendant could have done any number of things to protect herself. Instead, she went upstairs, picked up a loaded revolver, and waited for Mr. Strieby.[1]

Under these circumstances, there was a basis for the trial court to find that defendant could not have *reasonably* believed that shooting Mr. Strieby was necessary to prevent her own *imminent* death or serious bodily injury. I do not believe the court's finding is clearly erroneous. I would therefore affirm the conviction.

---

1. One of the witnesses of the earlier fight in the trailer testified that as defendant was leaving, "She said as soon as she got her hands on a gun, he was a dead SOB." In evaluating all of the evidence, the trial court stated as follows:

> There was no physical evidence that Mrs. Strieby had, other than initially, tried any vigorous efforts to escape the condo, to shout, to holler, to seek the assistance of others. There was no evidence in the record to suggest that she had used objects of furniture or anything else in the house to fend him off or to take any evasive action. But rather that she went up the stairs and got the gun at a time when he wasn't in vigorous, hot pursuit.