■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VELTON ELLIS, Appellant. — Judgment, Supreme Court, Bronx County (Quinn, J.), rendered June 16, 1977, convicting defendant following a jury trial of robbery in the first degree, criminal possession of a weapon in the fourth degree and criminal possession of a controlled substance in the seventh degree, reversed, on the law, on the facts and as a matter of discretion in the interest of justice, and the matter remanded for a new trial. We disagree with the ruling of the trial court on defendant's *Sandoval* motion which permitted cross-examination as to a 12-year-old 1965 conviction for breaking and entering in Virginia and to an 11-year-old 1966 conviction for unlawful entry. These convictions were sufficiently remote in time to conclude that they should have had no substantive effect upon defendant's credibility. The Trial Justice, in rejecting the argument that the earlier convictions were remote, found that defendant's frequent brushes with the law demonstrated a tendency to place his own interests above those of society. On this basis, the court permitted cross-examination on the earlier convictions in addition to a 1968 conviction for criminal trespass, a 1970 conviction for burglary and another 1970 conviction for violation of a Federal gun law. In so concluding, the Trial Justice overlooked the essence of the ruling by the Court of Appeals in *People v Sandoval* (34 NY2d 371, 376), that "[l]apse of time, however, will affect the materiality if not the relevance of previous conduct." In effect, as a result of the ruling by the trial court, the jury was permitted to consider defendant's propensity for committing criminal acts, which was error (*People v Mayrant*, 43 NY2d 236). That there were other subsequent convictions which could be used on cross-examination did not revive the two prior, stale convictions, nor could the prosecutor properly impeach defendant's credibility by resort to convictions which were so remote in time (see *People v Pippin*, 67 AD2d 413). The error and its harmful consequences were further accentuated in this case, where the prosecutor engaged in an unnecessarily extensive cross-examination of particulars dealing with each of the five prior convictions coupled with the reluctance, and, at time, refusal by defendant to respond as to the underlying events. Considering the nature of the proof which had been adduced bearing upon defendant's guilt, the case did not warrant the repeated and persistent harping by the prosecutor in inquiring as to the events bearing upon the prior convictions, which amounted to overkill. The same holds true with respect to the extended, argumentative cross-examination of appellant, whereby the trial assistant elicited answers from the defendant that the complaining witness and the police officer were lying. This impropriety was heightened by the prosecutor's repeated reference in summation that defendant had testified that the complainant and the officer had lied and, in referring to defendant's motive to lie, suggested "he has a lot of explaining to do in this case." Although an objection was sustained, the comment was repeated several times during the summation and was clearly improper, suggesting that the defendant had an obligation to offer an explanation. Under the circumstances and especially when viewed in conjunction with the other errors, the repeated inquiry as to whether defendant thought the prosecution witnesses were lying was highly improper (*People v Davis*, 63 AD2d 685; cf. *People v Ingram*, 49 AD2d 865). We also disagree with the procedure employed by the Trial Justice in permitting legal argument to be held in the presence of the jury at the time of the

application by the prosecutor to strike the testimony of the alibi witness, who testified that he was with defendant less than an hour and a half prior to the robbery. The argument on the ruling, which addressed the operative legal standard with respect to the sufficiency of alibi testimony, should have been held out of the presence of the jury (cf. *People v Kuss,* 32 NY2d 436, 445; *People v Muniz,* 62 AD2d 1025). While each of these errors, standing alone, might not warrant a reversal in light of the overwhelming proof bearing upon defendant's guilt, we find the combined effect of the errors sufficiently prejudicial so as to impinge upon defendant's right to a fair trial and to require remand for a new trial (*People v Crimmins,* 36 NY2d 230, 242). Whether the persistent, argumentative cross-examination resulted from an overzealous attitude on the part of the prosecutor or otherwise, it was improper and may have infected the jury's consideration of the case on the merits. As we observed in *People v Petrucelli* (44 AD2d 58, 59), "A prosecutor's performance, aimed at justice and not a conviction, must reflect self-discipline (*United States* v. *White,* 486 F. 2d 204; Code of Professional Responsibility, EC 7-13)" (see, also, *People v Bailey,* 58 NY2d 272). We have examined the other points raised by appellant and find them to be lacking in merit. Concur — Carro, J. P., Bloom, Fein and Kassal, JJ.

Asch, J., dissents in a memorandum as follows: Deborah Morton, a junior at City College, returned home on February 6, 1976, at approximately 1:20 A.M. As she approached her Bronx apartment building, she noticed defendant driving a car and looking at her. She entered her building and rang for the elevator. The defendant tapped on the glass and asked to be let in. She opened the door and allowed him to enter. Miss Morton and the man both got on the elevator. As she exited, the man stepped in front of her and said "Give me a kiss." She tried to leave the elevator and the man grabbed her from behind, put his hand over her mouth, held a screwdriver to her throat with his other hand and demanded her money. As she searched her pocketbook for money, the elevator returned to the lobby and the defendant dragged her towards the street, calling her obscene names. He forced her to the car he had been driving. While standing next to it, she gave him $15. He demanded more money and pushed her to the rear of his car, opening the door and ordering her to get in. She was able to break away, jump into a taxicab that was passing by, and copy the license plate number of defendant's car onto a magazine as he drove off. During much of the time this was taking place, Miss Morton was able to see her attacker, and once they were at defendant's car, she was literally face to face with him as she gave him the $15. Shortly after the incident was reported, defendant was seen and apprehended by a police officer in the same car bearing that same license plate number. A search of defendant and the car revealed marihuana and two screwdrivers. Forty-five minutes after this robbery, Deborah Morton entered the 44th Precinct and spontaneously identified defendant, who was standing in handcuffs near the desk as she walked in. The testimony established that when Officer Florio first saw defendant in the car, the latter accelerated, and when he got out of his car, he ran away. Defendant testified in his own behalf, denying any part in the robbery of Miss Morton. He asserted a "friend" gave him a ride home and after a chase (by Officer Florio), both ran away. Defendant testified he ran because he had a criminal record. Defendant's brother, Robert Ellis, conceded that he visited Miss Morton's apartment after the incident but denied that he did so to ask her to drop the charges. Finally, a friend of defendant, one Wiley Winston, testified he had been with defendant on the night in question from about 5 P.M. to about midnight, when he brought defendant to the subway. This short synopsis of the testimony adduced at the trial shows that the evidence against defendant was

overwhelming. The jury's decision to discredit the irrelevant and incredible testimony offered by the defense was easily understandable and eminently correct, in view of the overwhelming proof of defendant's guilt. The majority's enumeration of errors which, it finds, combined to impinge upon defendant's right to a fair trial must be viewed "in light of the overwhelming proof bearing upon defendant's guilt," as the majority itself concedes. The majority finds that the trial court's ruling on defendant's *Sandoval* motion, which permitted cross-examination as to a 12-year-old conviction for breaking and entering in Virginia and an 11-year-old conviction for unlawful entry, was error. However, the Trial Justice permitted cross-examination additionally on a nine-year-old conviction for criminal trespass, a seven-year-old conviction for burglary and another seven-year-old conviction for violation of a Federal gun law. The majority finds no error in allowing cross-examination on these "subsequent convictions" but categorizes the former convictions as "remote in time." Initially, the time difference between the two classes ranges from two years to five years — not such a great disparity. Perhaps even more significantly, the Court of Appeals did state in *Sandoval* that "[l]apse of time, however, will affect the materiality if not the relevance of previous conduct." (*People v Sandoval,* 34 NY2d 371, 376.) However, the court went on to qualify this statement in the next sentence: "The commission of an act of *impulsive violence,* particularly if remote in time, will seldom have any logical bearing on the defendant's credibility, veracity or honesty at the time of trial" (pp 376-377; emphasis added). Further, the court later added: "Commission of perjury or other crimes or acts of individual *dishonesty,* or untrustworthiness (e.g., *offenses involving theft* or fraud, bribery, or acts of deceit, cheating, breach of trust) will usually have a very material relevance, *whenever committed*" (p 377; emphasis added). The convictions in issue herein were not for acts of "impulsive violence" but for breaking and entering and unlawful entry — "offenses involving theft" and "dishonesty." The trial court was therefore correct in its ruling permitting cross-examination as to them. The majority further states that the "error" of allowing the use of these "remote" convictions was further accentuated by the prosecution's engaging in an unnecessarily extensive cross-examination of particulars dealing with each of the five prior convictions. Upon cross-examination as to a defendant's prior convictions for the purpose of impeaching credibility, extensive inquiry is not justified. However, "the prosecutor need not immediately cease cross-examination on the point once the defendant supplies the title of the offense for which he was found guilty. The court may — as it did in this case — permit further questioning for the purpose of determining, at least in general terms, what conduct gave rise to the conviction" (*People v Bennette,* 56 NY2d 142, 149). The "repeated and persistent harping by the prosecutor in inquiring as to the events bearing upon the prior convictions," as described by the majority, was occasioned by defendant's repeated and persistent contumacious behavior in refusing to answer the questions about his prior crimes. This conduct of defendant prolonged this area of cross-examination; not any overzealous activity on the part of the prosecutor, who was well within the bounds of proper cross-examination in this area (*People v Bennette, supra*). The majority also finds that the prosecutor engaged in extended, argumentative cross-examination of the defendant whereby the trial assistant elicited answers that the complaining witness and the police officer were lying and further repeatedly referred in summation to this testimony. However, it is clear from the trial record that defendant stated without prompting from the prosecutor that he was being "railroaded" in this case, and when asked if Miss Morton's testimony was "railroading" him, defendant said: "She is telling a lie. You all are

railroading me." Thus, the People only probed this matter after "the defendant * * * during cross-examination, spontaneously accused several prosecution witnesses of committing perjury" (*People v Harris,* 84 AD2d 63, 101, affd 57 NY2d 335). Similarly, the prosecutor's reference in his summation was not only proper comment, since defendant had opened the door in his testimony, but was also proper response to the defense counsel's summation (see *People v Arce,* 42 NY2d 179, 190). The single remark of the prosecutor, that to acquit defendant the jury would have to conclude that the complaining witness and Officer Florio lied, was inappropriate (*People v Ingram,* 49 AD2d 865). Again, however, this comment must not be viewed in a vacuum but within the context of the defendant's self-initiated attacks on the witnesses' credibility and the defense counsel's adoption of this position (*People v Arce, supra,* at p 190). Even assuming such was error, it must be deemed harmless in light of the summation and record as a whole (*People v Galloway,* 54 NY2d 396). Finally, the majority finds that the trial court erred in permitting legal argument to be held in the presence of the jury at the time of the application by the prosecutor to strike the testimony of Wiley Winston, the alibi witness, who testified that he was with defendant less than an hour and a half prior to the robbery. Initially, I note that defendant failed to object to this procedure by the trial court and thus has not preserved this claim for review as a matter of law (*People v Charleston,* 56 NY2d 886). Although this court can review an alleged error in the exercise of its discretion even when no objection is made, defendant can demonstrate no prejudice whatsoever from the argument in open court. The People's motion was denied by the court. In addition, Winston's testimony was irrelevant, not dealing with the pertinent time during which the crime was committed. As noted, *supra,* in detail, the evidence against defendant was overwhelming and he certainly received a fair trial. This right to a fair trial, however, does not necessarily guarantee this defendant or any other a perfect trial (*People v Rivera,* 39 NY2d 519, 523). It is apparent that the "errors" adduced by the majority, if errors they were, were not so prejudicial as to deprive defendant of his due process right to a fair trial (see *People v Crimmins,* 36 NY2d 230). Accordingly, I would affirm the judgment of the Supreme Court, Bronx County (Quinn, J.), rendered June 16, 1977, convicting defendant, after trial by jury, of robbery in the first degree and criminal possession of a controlled substance in the seventh degree.