STATE of Utah, Plaintiff and
Respondent,

v.

Eddie Walter BARELLA, Jr.,
Defendant and Appellant.

No. 20529.

Supreme Court of Utah.

Jan. 13, 1986.

Randine Salerno, Ogden, for defendant
and appellant.

David L. Wilkinson, Atty. Gen., J. Stephen Mikita, Salt Lake City, for plaintiff
and respondent.

HOWE, Justice:

Defendant, Eddie Walter Barella, Jr., appeals his conviction of distributing a controlled substance for value, a third degree felony, in violation of U.C.A., 1953, § 58-37-8 (Supp.1983).

On May 13, 1982, William Pectol, an undercover agent for the State Narcotics and Liquor Law Enforcement Division, telephoned Morgan Skinner to arrange the purchase of one pound of marijuana. They agreed to meet at the Hideaway Lounge at 2:00 that afternoon. Skinner indicated that he would have "his man," Walter, meet them there.

At the lounge, Skinner told Pectol that $200 would buy a quarter-pound of marijuana. Skinner went upstairs to get the defendant. When they returned, Pectol asked defendant the price of a quarter-pound. Defendant told him that it was $200. He then said that he had to make a phone call to check on the price, and he left for several minutes. He returned with Richard Carmona, who discussed the price of the marijuana with Pectol. During that conversation, defendant kept interjecting that they were not making any money on the deal. Pectol then agreed to pay Carmona an additional $10 for his trouble, and defendant left the lounge with Carmona. Approximately thirty minutes later, he returned and told Pectol that Carmona was waiting outside in the car. He pointed out the car to Pectol, but did not participate further in the drug transaction.

In November of 1982, defendant and Skinner were arrested and charged with distributing a controlled substance for value. Before their arrest, Richard Carmona was killed in an automobile accident. Skinner subsequently pleaded guilty to a lesser charge. Defendant was tried by a jury and convicted of the charged offense.

## I.

Defendant first contends that the trial court abused its discretion by limiting his cross-examination of the State's witness, William Pectol. At the trial, defense counsel tried to cross-examine Pectol regarding his resignation from the State Narcotics and Liquor Law Enforcement Division. The following testimony ensued:

Q Are you still with the Department of Narcotics?

A No, I'm not.

Q When did you cease your employment there?

A I resigned in Demember [sic] of 1982.

Q Have you made efforts to become reemployed there?

A Yes, I have.

Q What are the results of those efforts?

A I am waiting for an interview to be set up right now.

Q In your resignation in December of 1982, was that your own free choice?

At this point, the prosecutor voiced his objection, contending that he failed to see how the question or its answer could be relevant. The objection was sustained by the court. Counsel approached the bench, and an off-the-record discussion was held. Subsequently, the witness answered "no" to the question previously asked, and the court allowed defense counsel to continue:

Q Since that time you have been making efforts to become reemployed with that department.

A Yes.

Q In your desire or your efforts to be reemployed, would it be beneficial to you to show that your past work with them resulted in any convictions and —well, end of question.

A No.

Q With evidence of good work with them where you made deals and busts as you were required to do, you don't feel that that would influence anyone in the decision for you to become reemployed?

A No. My standard job performance in the past three years takes care of that, it doesn't matter if I make two arrests or two hundred.

Q Do you feel that, if you did not cooperate in this trial, that that would affect your chances for reemployment with them?

A No. I'm doing this for the county, the State isn't in it.

·Q They take no interest at all in this?

A I'm sure that they take an interest but this is the county that the transaction happened in, everything happened, and that's who I'm doing it for.

■ It is clear that defense counsel was accorded ample opportunity to question Pectol about his employment with the State Division. Further, there is no indication that defendant objected to any limitation he thought was imposed on him. As we stated in *State v. Wulffenstein*, Utah, 657 P.2d 289 (1982), *cert. denied*, 460 U.S. 1044, 103 S.Ct. 1443, 75 L.Ed.2d 799 (1983):

> When a defendant predicates error to this Court, he has the duty and responsibility of supporting such allegation by an adequate record. *Absent that record defendant's assignment of error stands as a unilateral allegation which the review court has no power to determine.* This Court simply cannot rule on a question which depends for its existence upon alleged facts unsupported by the record. *See State v. Jones*, Utah, 657 P.2d 1263 (1982), and cases cited therein.

*Id.* at 293 (emphasis added). We find no error.

## II.

Defendant next contends that there was a conflict of interest between the attorney who represented him and the attorney who represented the co-defendant, Skinner. Both attorneys were legal defenders for Box Elder County, shared the same office and were associated as well in private practice. Defendant asserts that this close association denied him his right to effective

assistance of counsel. He does not, however, point out specifically any conflict except to suggest that his co-defendant's plea to a lesser charge may have been in exchange for a promise "that he would testify against Barella." There is nothing in the record which would even remotely support such speculation. On the contrary, co-defendant Skinner was not called to testify at Defendant's trial by either side.

The Arizona Supreme Court reviewed a similar contention in the case of *State v. Jelks*, 105 Ariz. 175, 461 P.2d 473 (1969), and cited with approval the language in *United States v. Lugo*, 350 F.2d 858 (9th Cir.1965), where the court stated:

> [W]hile we cannot indulge in nice calculations about the amount of prejudice which results from a conflict of interest ... neither can we create a conflict of interest out of mere conjecture as to what might have been shown.

*Id.* at 859.

■ While we recognize that conflicts of interests could arise when office associates represent co-defendants and that defense counsel should exercise care to avoid conflicts, both potential and real, the defendant has not shown and we are unable to perceive any conflict under the circumstances of this case. We hold therefore that defendant received the effective assistance of counsel to which he was entitled.

Conviction affirmed.

HALL, C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.