STATE of Utah, Plaintiff and Appellee,

v.

James Lloyd EMMETT, Defendant and Appellant.

No. 910077.

Supreme Court of Utah.

April 7, 1992.

Rehearing Denied July 7, 1992.

R. Paul Van Dam, Sandra L. Sjogren, Salt Lake City, for plaintiff and appellee.

Gary W. Pendleton, St. George, for defendant and appellant.

## AMENDED OPINION

HALL, Chief Justice:

Defendant James Lloyd Emmett appeals his conviction of sodomy upon a child.[1] We reverse and remand for a new trial.

On August 28, 1991, Emmett was brought to trial on the charges that he sodomized and, in a separate incident, sexually abused his five-year-old son. The only direct evidence of sodomy came from the testimony of the alleged victim, who stated that his father had "put his front private in my back private." The child was not certain whether he was clothed during the incident, and he testified that he thought his father was clothed. There was no physical evidence of sexual abuse, nor was any evidence presented that the child was presently exhibiting psychological symptoms of sexual abuse. However, a psychologist testified that the child was bright and resistant to suggestion.

Similarly, the only direct evidence that Emmett had sexually abused his son was presented through the alleged victim's testimony. Emmett's son stated that after he had gotten out of a bath, Emmett had rubbed baby oil all over his body, including his genitals. However, on cross-examination the child stated that Emmett did not rub his "private until it changed or got hard" but simply rubbed oil over his entire body.

At the close of the State's case, Emmett moved for a dismissal of the charge of child sexual abuse. The trial judge reserved ruling on the motion until he had an opportunity to review the record. However, defendant presented his entire case before the trial court ruled. Emmett took the stand and denied all of the allegations. Prior to submitting the case to the jury, the trial court dismissed the charge of sexual abuse of a child on the ground that the State had failed to establish a prima facie case of child sexual abuse. The charge of sodomy upon a child was submitted to the jury, and a verdict of guilty was returned.

Emmett advances several claims of error, the first being that the trial court erred by not ruling on his motion for a directed verdict at the close of the State's case.

■ Emmett was entitled to a prompt ruling on his motion. As we have previously stated:

[Utah Code Ann. § ] 77–17–3 clearly entitles the defendant to an immediate ruling on the sufficiency of the prosecution's case at the close of its case. The trial judge should at that time "rule promptly upon such a motion so that the defendant may decide whether or not to proceed with the introduction of evidence in his defense." The purpose of the rule is to "avoid forcing a defendant into going forward with his own evidence when the state's case is insufficient."[2]

While the State admits that the trial court erred, it argues that Emmett waived this claim or, in the alternative, that the error was harmless.

■ In dealing with the claim of waiver, it is important to emphasize that Emmett made his motion to dismiss in a proper and timely manner. The State's contention is based on the fact that Emmett failed to take exception when the trial court took the matter under advisement. This argument misapplies our cases dealing with waiver. We have never required criminal defendants who have properly presented a claim to take exception to a trial court's erroneous ruling in order to preserve the issue on appeal. Rather, our case law establishes that the doctrine of waiver has application if defendants fail to raise claims at the appropriate time at the trial level, so the trial judge has an opportunity to rule

---

**1.** *See* Utah Code Ann. § 76–5–403.1.

**2.** *State v. Smith,* 675 P.2d 521, 524 (Utah 1983) (quoting *United States v. Brown,* 456 F.2d 293, 294 (2d Cir.), *cert. denied,* 407 U.S. 910, 92 S.Ct. 2436, 32 L.Ed.2d 684 (1972)); *State v. Tucker,* 26 Ariz.App. 376, 548 P.2d 1188, 1190 (1976)).

on the issue[3] or if they do not create an adequate record for an appellate court to review their claims.[4] Such was not the case here; hence, no waiver has occurred.

■ The State makes two arguments in asserting that the failure to rule on Emmett's motion was harmless. First, the charge of sexual abuse of a child should not have been dismissed at the close of the State's case. Accordingly, Emmett was not prejudiced by the trial court's reserving judgment on the issue.

When a motion for a directed verdict is made at the close of the State's case, the trial court should dismiss the charge if the State did not establish a prima facie case against the defendant by producing "believable evidence of all the elements of the crime charged."[5] Under the State's theory of the case, the elements of the child sexual abuse charge are that Emmett touched the genitals of his son with the intent to arouse or gratify his own sexual desire.[6] The testimony of Emmett's son clearly establishes a touching of the genitals. Therefore, the issue is whether the State produced prima facie evidence that this touching was done with a sexual intent.

■ While evidence of intent is usually not susceptible to direct proof, it can often be inferred from circumstance.[7] The State argues that sexual motivation can be inferred from the testimony of Emmett's son stating that Emmett briefly rubbed baby oil over his entire body, including his genitals, after he had gotten out of the bath.

In addition, Emmett's wife testified that Emmett had bought the oil without her knowledge and that there was no medical need to rub baby oil on the child.

Testimony that Emmett brought the oil into the house is of little probative value since Emmett's wife also testified that he often did the shopping for the family. We are therefore left with evidence that Emmett briefly touched his five-year-old son's genitals while performing an act that, while not medically necessary, is arguably hygienic. Given this evidence, we are in agreement with the trial court that the State failed to establish a prima facie case of sexual abuse of a child. Family relationships between parents and small children normally involve a degree of intimacy; the present allegations do not describe an act that falls outside the bounds of normal behavior. More is needed to produce prima facie evidence of sexual intent than the allegation that a parent briefly touched a young child's genitals while the child was bathing, coupled with the allegation that this touching was not medically necessary.

■ The State argues that the error is harmless because it did not impact the jury's decision. In instances where an error does not impact a federal constitutional right, the test used for determining an error's harmfulness is whether there is a reasonable likelihood that absent the error a different result would have occurred.[8] This determination should be made on the basis of the record as a whole. In the

---

**3.** *See, e.g., State v. McCardell,* 652 P.2d 942, 947 (Utah 1982); *State v. Stone,* 18 Utah 2d 289, 422 P.2d 194, 195 (1967).

**4.** *See, e.g., State v. Barella,* 714 P.2d 287, 288 (Utah 1986); *State v. Wulffenstein,* 657 P.2d 289, 293 (Utah 1982), *cert. denied,* 460 U.S. 1044, 103 S.Ct. 1443, 75 L.Ed.2d 799 (1983).

**5.** *Smith,* 675 P.2d at 524.

**6.** Utah Code Ann. § 76–5–404.1 provides:

(1) A person commits sexual abuse of a child if, under circumstances not amounting to rape of a child, object rape of a child, sodomy upon a child, or an attempt to commit any of these offenses, the actor touches the anus, buttocks, or genitalia of any child, the breast of a female child younger than 14

years of age, or otherwise takes indecent liberties with a child, or causes a child to take indecent liberties with the actor or another with the intent to cause substantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person regardless of the sex of any participant.

**7.** *See, e.g., State v. James,* 819 P.2d 781, 789 (Utah 1991); *State v. Watts,* 675 P.2d 566, 569 (Utah 1983).

**8.** *See, e.g., State v. Verde,* 770 P.2d 116, 120 (Utah 1989); *State v. Hackford,* 737 P.2d 200, 204 & n. 1 (Utah 1987); *State v. Knight,* 734 P.2d 913, 919–20 (Utah 1987); *State v. Rammel,* 721 P.2d 498, 500 (Utah 1986); Utah R.Crim.P. 30(a); Utah R.Evid. 103(a); Utah R.Civ.P. 61.

instant case, the determination is best made by viewing this error in conjunction with other errors which occurred during the trial, specifically, instances of prosecutorial misconduct.

■ Emmett raises several claims of prosecutorial misconduct. One claim centers on comments the prosecutor made in closing arguments concerning Emmett's previous conviction for forgery. Generally, the test used for determining whether a prosecutor's statements are improper and constitute error is whether the remarks " 'called to the jurors' attention matters which they would not be justified in considering in reaching a verdict.' " [9] Improper statements will require reversal if they are determined to be harmful.[10]

■ In the instant case, however, Emmett failed to make a timely objection to the prosecutor's statements. Failure to object to improper remarks will constitute a waiver of the claim, unless the remarks constitute plain error.[11] Plain error is error that is both harmful and obvious.[12] This court reviews allegations of plain error despite the lack of a timely objection,

provided, of course, that the trial court was not led into error. We do so in order to avoid manifest injustice and because, if the error is obvious, the trial court has the opportunity to address the error regardless of the fact that it was never brought to the court's attention.[13] Therefore, in order to obtain a reversal, Emmett must show that the prosecutor's remarks were obviously improper and harmful and that his failure to object did not lead the court into error.

It is well established that under Utah Rules of Evidence 404 and 609, past criminal convictions are only admissible for the limited purpose of attacking the credibility of a defendant and should not be used as substantive evidence of guilt.[14] Indeed, rule 404(b) expressly states, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith."

In commenting on Emmett's forgery conviction, the prosecutor noted that the victim of the crime was Emmett's sister.[15] Stating that Emmett is "[s]ome one who took advantage of his own family member," the prosecutor declared, "Well, he did it

**9.** *State v. Johnson,* 663 P.2d 48, 51 (Utah 1983) (quoting *State v. Creviston,* 646 P.2d 750, 754 (Utah 1982)) (*Johnson* was overruled on other grounds by *State v. Roberts,* 711 P.2d 235 (Utah 1985)).

**10.** *See, e.g., State v. Tillman,* 750 P.2d 546, 555 (Utah 1987); *State v. Peterson,* 722 P.2d 768, 770 (Utah 1986); *see also Verde,* 770 P.2d at 120; *Hackford,* 737 P.2d at 204; *Knight,* 734 P.2d at 919–20; *Rammel,* 721 P.2d at 500; Utah R.Crim.P. 30(a); Utah R.Evid. 103(a); Utah R.Civ.P. 61.

**11.** *See State v. Bullock,* 791 P.2d 155, 158 (Utah 1989) (no obvious error because admission of evidence part of trial strategy); *State v. Whittle,* 780 P.2d 819, 821 (Utah 1989) (applying plain error analysis to claims of prosecutor misconduct); *see also, e.g., State v. Eldredge,* 773 P.2d 29, 34, 35 (Utah), *cert. denied,* 493 U.S. 814, 110 S.Ct. 62, 107 L.Ed.2d 29 (1989); *Verde,* 770 P.2d at 118.

The State claims that since Emmett raised the claim of prosecutorial misconduct in a motion for new trial, we should review the claim on an abuse of discretion standard. Because we address the issue on a plain error standard, which is more deferential then a discretionary standard, we need not address this claim.

**12.** *See, e.g., Bullock,* 791 P.2d at 158; *Eldredge,* 773 P.2d at 35; *Verde,* 770 P.2d at 118.

**13.** *Bullock,* 791 P.2d at 158; *Eldredge,* 773 P.2d at 35.

**14.** *State v. Tarafa,* 720 P.2d 1368, 1372 (Utah 1986).

**15.** Generally, inquiries into prior convictions under rule 609(a) are limited to the nature of the crime, the date of the conviction, and the punishment. However, if the defendant attempts to explain away the effects of the conviction or minimize guilt, the State may cross-examine the defendant concerning the details of the past conviction. *See State v. Tucker,* 800 P.2d 819, 822–23 (Utah Ct.App.1990).

In the instant case, Emmett volunteered on direct examination that the victim of the forgery was his sister. Although it is not clear why this information was elicited, it is evident that this testimony was not offered to explain away the effects of the conviction or minimize guilt. No other details of the offense were offered. Nonetheless, Emmett's statement opened the door for the prosecution to mention that the victim of the crime was Emmett's sister. However, this statement does not open the door for the prosecution to use the past conviction substantively.

again." This comment clearly urged the jury to view Emmett as a person who commits crimes against his family and to use this characteristic as evidence that Emmett sodomized his son. Therefore, the comments are in direct violation of rules 404 and 609. Given the clarity of the law in this area and the blatant nature of the prosecutor's statements, it should have been obvious to the trial court that the prosecutor's remarks called to the jurors' attention matters they were not justified in considering. Therefore, the first part of the plain error standard has been met.

In determining whether these errors are harmful, it is important to note that the evidence of sodomy in this case, while sufficient to support a conviction, is not compelling. The entire State's case is built on the somewhat conflicting and confused testimony of a five-year-old child, uncorroborated by any other direct evidence of guilt. While it cannot be expected that the testimony of a young child should be as coherent as the testimony of an adult, confusion and discrepancies in this testimony nonetheless affect the strength of the State's case.

It is to be observed that we have previously held improper comments concerning prior convictions to be harmful.[16] To suggest to the jury that Emmett is the type of person who regularly takes advantage of his family members and that the sodomizing of his son is just another example of this trait is to introduce a powerful and inappropriate factor into the deliberative process. In close cases, the substantive use of a prior conviction can often tilt the balance in favor of conviction, particularly in the instant case, where Emmett's character is at the heart of his defense.

 It is also to be observed that the foregoing is not the only error which may have impacted the jury's decision. Because the trial court reserved ruling on the motion to dismiss, Emmett was subjected to cross-examination concerning the allegations of sexual abuse. This cross-examina-

tion led to the only instance where Emmett's testimony came into direct conflict with the testimony of an adult witness. Specifically, both Emmett and his wife testified that they did not purchase the oil which Emmett allegedly rubbed on his son. While the purchase of the oil is not material to the sodomy charge, the fact that Emmett's testimony and his wife's testimony conflict nevertheless impacts on Emmett's credibility. If the jury found Emmett's wife credible, then, given this conflict, it is more likely that they would believe Emmett was not testifying truthfully.

Alone, this error may have been harmless. However, viewed in conjunction with the prosecutor's improper argument, the fact that the evidence in favor of guilt was not strong, and the fact that these errors impacted Emmett's credibility and character, which were at the heart of his defense—there is a reasonable likelihood that absent the errors a different result would have occurred. We therefore decline to accept the reasoning of the trial court that it was led into error by defense counsel's choice of trial strategy or that the error was simply harmless. Rather, we conclude that the error was of sufficient magnitude as to warrant a new trial.

Given the resolution of these issues, it is not necessary to rule on the remaining claims. However, because some issues presented may arise on retrial, we will address them for the purpose of providing guidance.[17]

 During Emmett's cross-examination, the prosecutor repeatedly asked Emmett if he had rehearsed his testimony with his attorney. At one point, the prosecutor asked, "He didn't tell you to face the jury and *tell you exactly what to say?*" While Emmett denied the prosecutor's allegations, the question nevertheless implies that the defense attorney manufactured Emmett's testimony. No evidence was presented to this effect during the trial. Generally, it is error to ask an accused a question that implies the existence of a

---

16. *Tarafa,* 720 P.2d at 1373.

17. *See, e.g., State v. James,* 819 P.2d at 795; *Tarafa,* 720 P.2d at 1370.

prejudicial fact unless the prosecution can prove the existence of that fact.[18] Otherwise, the only limit on such a line of questioning would be the prosecutor's imagination. Therefore, on retrial the prosecutor must be prepared to produce actual evidence that defense counsel manufactured Emmett's testimony in order to persist with such questioning.

■ The prosecutor also asked Emmett if he was claiming that his son was lying. Several courts have noted that it is improper to ask a criminal defendant to comment on the veracity of another witness.[19] The question is improper because it is argumentative and seeks information beyond the witness's competence.[20] The prejudicial effect of such a question lies in the fact that it suggests to the jury that a witness is committing perjury even though there are other explanations for the inconsistency. In addition, it puts the defendant in the untenable position of commenting on the character and motivations of another witness who may appear sympathetic to the jury.[21] This question, therefore, was also improper.

■ It is not necessary to address how these questions affected the trial, given our previous holding. However, we feel again compelled to note that prosecutors have a duty to eschew all improper tactics.[22]

[A prosecuting attorney] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.[23]

For the reasons set forth above, Emmett is entitled to a new trial on the charge of sodomy upon a child.

Reversed and remanded.

STEWART, and DURHAM, J., concur.

HOWE, Associate Chief Justice, dissenting.

I dissent. I would affirm defendant's conviction of sodomy upon a child.

First, I disagree with the majority's assertion that it was not necessary for defendant's counsel to make an objection when the trial judge took defendant's motion to dismiss under advisement. The majority writes:

We have never required criminal defendants who have properly presented a

---

**18.** *See Peterson,* 722 P.2d at 769–70; *United States v. Silverstein,* 737 F.2d 864, 868 (1984); *State v. Singleton,* 66 Ariz. 49, 182 P.2d 920, 930 (1947).

To allow this sort of examination would be to allow the imaginative and overzealous prosecutor to concoct a damaging line of examination which could leave with the jury the impression that defendant was anything the question, by innuendo, seemed to suggest. If the questions were persistent enough and cleverly enough framed, no amount of denial on the part of the defendant would be able to erase the impression in the mind of the jury that the prosecutor actually had such facts on hand and that probably there was some truth to the insinuations.

*Id.*

**19.** *See United States v. Narciso,* 446 F.Supp. 252, 321 (E.D.Mich.1977); *Commonwealth v. Long,* 17 Mass.App. 707, 462 N.E.2d 330, 331–32 *review denied,* 392 Mass. 1102, 465 N.E.2d 262 (1984); *People v. Ellis,* 94 A.D.2d 652, 462 N.Y.S.2d 212, 213–14 (1983).

**20.** *See Narciso,* 446 F.Supp. at 321; *Long,* 462 N.E.2d at 331–32; *Ellis,* 462 N.Y.S.2d at 213–14.

**21.** *See Narciso,* 446 F.Supp. at 321; *Long,* 462 N.E.2d at 331–32; *Ellis,* 462 N.Y.S.2d at 213–14.

**22.** *Tillman,* 750 P.2d at 557.

**23.** *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935).

claim[1] to take exception[2] to a trial court's erroneous ruling in order to preserve the issue on appeal. Rather, our case law establishes that the doctrine of waiver has application if defendants fail to raise claims[3] at the appropriate time at the trial level, so the trial judge has an opportunity to rule on the issue....

I cannot accept this reasoning. The trial judge did not make an erroneous ruling. Instead, he made no ruling. When the judge took the motion to dismiss under advisement and directed defendant to put on his defense to the sexual abuse charge, I believe it was incumbent on defendant's counsel to object so that the judge was alerted to the potential prejudice to defendant. This is exactly what the majority in the second sentence of the above quote seems to say is required. Defendant's counsel by his silence did not accord the trial judge the required opportunity to stop and examine this procedure. Rule 20, Utah Rules of Criminal Procedure, states:

> Exceptions to rulings or orders of the court are unnecessary. It is sufficient that a party state his *objections to the actions of the court* and the reasons therefor. If a party has no opportunity to object to a ruling or order, the absence of an objection shall not thereafter prejudice him.

(Emphasis added.)

In *State v. Stone*, 18 Utah 2d 289, 422 P.2d 194 (1967), the appellant complained that the trial court had admitted documentary evidence reserving the right to reconsider unless the lack of foundation was rectified or the evidence was connected up. This court held that it was incumbent upon the appellant's counsel to call to the attention of the court that it had admitted the evidence subject to reservations and to request a final ruling on the admissibility. Otherwise, said this court, "one easily could invite error by silence." 18 Utah 2d at 291, 422 P.2d at 195; *see also State v. Barella*, 714 P.2d 287, 288 (Utah 1986) (de-

fense counsel was required to timely object to any limitation counsel believed the trial court had imposed in the cross-examination of a witness).

Second, I would not reach the issues raised by defendant as to prosecutorial misconduct. The record clearly indicates that defendant's counsel made a purposeful, strategic decision not to object when the alleged misconduct occurred. At the hearing held on defendant's motion for a new trial, counsel contended that the prosecutor was guilty of misconduct when he made reference to defendant's prior conviction of a felony to prove that he had committed the crime with which he was now charged. Moreover, counsel contended that the prosecutor erred in questioning defendant whether he had been coached by his counsel as to what he should say when testifying. Defense counsel then admitted that he had purposely not objected to the alleged misconduct because:

> You know, if you can—if defense counsel gets up and objects to that line of questioning, it only reinforces the line of questioning in the minds of the jury, and I don't think that we should be prejudiced by *electing* not to object to something that is obviously inappropriate—an inappropriate line of questioning.

(Emphasis added.) Defense counsel then suggested to the trial court that if counsel's decision not to object was poor judgment, the court should find ineffective assistance of counsel.

The trial court denied the motion for a new trial, stating:

> I think counsel undertook a tactical decision not to object, and I think that's counsel's right to do that. If counsel felt like he was being prejudiced or his position was being prejudiced by the comments, then the law requires you to stand up and say so and let the jury know that and let—and to do it at a time when the judge can do something about

---

1. I assume the word "claim" means a motion.

2. I assume "take exception" means to object, since rule 46, Utah Rules of Civil Procedure, provides that exceptions are unnecessary.

3. I assume that "raise claims" means to object.

it. To sit quietly and let the argument go on and then raise it later and say, "We get a new trial because I didn't object," to me makes no sense at all. If such were the case, no trial would ever be concluded.

The judge then observed that the case had been well tried, well argued, and well researched. He found nothing in the conduct of defense counsel which would indicate he was not effective. He suggested that had he been defense counsel, he might well have made the same decision not to object. He stated that the prosecutorial conduct, although not proper, was not of the type which would convince a jury that it ought to abandon its legal responsibilities and disregard the instructions and the evidence and decide the guilt of defendant on some other basis. He concluded that he did not think the misconduct caused the jury to arrive at a different conclusion than it would have otherwise done.

In view of defense counsel's admission, I cannot join the majority in finding plain error and ordering a new trial. There is no plain error under our case law. *State v. Bullock*, 791 P.2d 155, 159 (Utah 1989). The majority has not considered the admission or the trial judge's thoughtful comments at the hearing on the motion for a new trial. I would affirm the judge's decision not to grant a new trial, there being no abuse of discretion.

ZIMMERMAN, J., concurs in the dissenting opinion of Associate Chief Justice HOWE.