**STATE of Utah, Plaintiff and Appellee,**

v.

**Dale Phillip TAYLOR, Defendant and Appellant.**

No. 930784–CA.

Court of Appeals of Utah.

Nov. 4, 1994.

Lisa J. Remal and Janet Miller, Salt Lake City, for appellant.

Jan Graham and Kenneth A. Bronston, Salt Lake City, for appellee.

Before BILLINGS, GREENWOOD and JACKSON, JJ.

## OPINION

GREENWOOD, Judge:

Defendant Dale Phillip Taylor appeals his conviction of aggravated assault, a third degree felony, in violation of Utah Code Ann. § 76-5-103 (1990). We affirm.

## FACTS[1]

On the morning of June 21, 1993, defendant entered Fankhauser Jewelry in Salt Lake City, with two rings he had found a few days earlier in a laundromat. One ring contained badly worn blue stones, while the other was made of 14 karat gold, and contained a karat-sized stone. Fankhauser Jewelry is owned by Miriam Davis (Davis) and her husband, Gary Davis. Their daughter, Linda Davis (Linda), is also employed at the store, and all three were present the day in question.

Defendant testified at trial that he asked Davis for appraisals on both rings, since he did not know their value. Davis testified that defendant entered the store claiming to have a diamond ring belonging to his wife, although defendant denied making the statement. Davis examined the first ring and returned it to defendant, telling him it was worthless. However, Davis thought the ring with the karat-sized stone was of some value. Davis looked at the ring, cleaned it, examined it with a jeweler's magnifier, and measured the size of the stone. Davis showed the ring to her husband, who also examined it.

Davis offered to buy the ring from defendant for $3,000 in cash and merchandise. Defendant accepted, and in exchange for the ring received a check for $1,275, a $975 men's ring, and a $750 gold-filled watch. Davis was not sure if there were sufficient funds in her account to cover the check, so she asked defendant not to cash the check until the next day. Defendant agreed. Nonetheless, after defendant left the store, he went to a bank and, learning that the account had sufficient funds, cashed the check.

After defendant left the store, Davis used a diamond tester to more carefully examine the ring. The diamond tester indicated that instead of a one karat diamond, the ring contained a karat-sized cubic zirconium stone worth ten to fifteen dollars. Davis attempted to stop payment on the check, but it had already been cashed.

About three hours later, defendant returned to Fankhauser Jewelry to have the watch adjusted. Linda told defendant the ring did not contain a diamond and demanded that defendant return the cash and merchandise. Defendant insisted the stone was genuine and refused to observe a testing of the ring. Defendant then told Davis that the cash he had received for the ring was in his car and he would get it. Defendant left the store and proceeded to walk around the corner towards the parking lot. Linda followed defendant out of the store and to his car. As they approached his car, defendant told Linda the money was not in his car, but in his bank.

As defendant opened his car door, Linda put her hands up to keep the door from hitting her. Defendant started his car, but Linda turned off the ignition. Defendant grabbed Linda's arms, shaking them and slamming them into the steering wheel several times. Defendant then threw Linda to the ground, started his car, and began backing his car towards her. Linda was forced to move to avoid being hit. Defendant then drove his car forward towards Linda, forcing her to move away a second time.

Defendant was arrested and charged with two counts: (1) theft by deception, in violation of Utah Code Ann. § 76–6–405 (1990); and (2) aggravated assault, in violation of Utah Code Ann. § 76–5–103 (1990). After the State concluded presenting its case-in-chief, defendant moved that the trial court dismiss the charges against him, arguing insufficiency of evidence. The trial court denied the motion to dismiss the aggravated assault charge, and took under advisement the motion to dismiss the theft by deception charge. As a result, defendant had to present to the jury his case regarding theft by deception.

During cross-examination of defendant, the prosecutor asked what had happened to the property defendant received in exchange for the ring. The prosecutor also alluded to a pawn ticket from the state of Washington indicating defendant pawned the merchandise soon after the incident. However, the State did not offer the pawn ticket into evi-

---

1. On appeal, we view the facts in a light most favorable to the jury's verdict and state them accordingly. *State v. Alvarado*, 845 P.2d 966, 968 (Utah App.1993).

dence. Nevertheless, defendant admitted to pawning the merchandise in Washington. Finally, defendant was asked whether he disagreed with Davis's testimony regarding the origin of the ring, which conflicted with his own testimony.

At the conclusion of the trial, the jury retired to deliberate both counts against defendant. After four hours, the jury reached a verdict on the aggravated assault charge but could not agree on the theft by deception charge. After another hour of deliberation, the jury returned a verdict of guilty on the aggravated assault charge, but was still unable to reach a verdict on the theft by deception charge. Defendant again requested a ruling on the motion to dismiss the theft by deception charge. The trial court denied the motion and declared a mistrial as to the theft by deception charge.

## ISSUES

Defendant raises the following issues on appeal: (1) Did the trial court err in not granting the motion to dismiss the theft by deception charge? (2) Did the trial court err by not promptly ruling on the motion to dismiss? and (3) Did prosecutorial misconduct occur at trial? Defendant argues all three constitute reversible error because they impacted the jury's guilty verdict on the aggravated assault charge.

## STANDARD OF REVIEW

■ A trial court's ruling on a motion to dismiss is a question of law. *State v. Maestas,* 652 P.2d 903, 905 (Utah 1982). Therefore, this court reviews the trial court's decision for correctness, with no particular deference to its legal conclusions. *State v. Mickelson,* 848 P.2d 677, 684 (Utah App.1992).

■ The test for determining whether a prosecutor's statements at trial constitute error is whether the remarks "called to the jurors' attention matters which they would not be justified in considering in reaching a verdict." *State v. Emmett,* 839 P.2d 781, 785 (Utah 1992) (quoting *State v. Johnson,* 663 P.2d 48, 51 (Utah 1983)). Only if the improper statements are deemed to be harmful will they require reversal. *Id.*

## ANALYSIS

### Motion to Dismiss Theft by Deception Charge

■ Defendant argues that the State did not establish a prima facie case of theft by deception because there was not sufficient evidence on the required elements. Thus, the trial judge erred in not granting defendant's motion to dismiss. The State, conversely, argues that the jury could have found proof of all of the elements of theft by deception from the evidence presented at trial.

■ In determining whether there is sufficient evidence to send a case to the jury, the court uses the same standard as for a claim of insufficient evidence to support a jury verdict. *State v. Dibello,* 780 P.2d 1221, 1225 (Utah 1989). In *Dibello,* defendant appealed a second degree murder conviction, contending there was insufficient evidence to warrant sending the case to the jury. In concluding the trial court did not err, the *Dibello* court noted that appellate courts should "uphold the trial court's decision if, upon reviewing the evidence and all inferences that can be reasonably drawn from it, [the court] conclude[s] that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *Id.* Additionally, the evidence is to be viewed in a light most favorable to the State. *State v. Iverson,* 10 Utah 2d 171, 350 P.2d 152, 153 (1960). In viewing the evidence in this light, if "the jury acting fairly and reasonably could find the defendant guilty beyond a reasonable doubt, the judge is required to submit the case to the jury for determination of the guilt or innocence of defendant." *Id.*

The Utah theft by deception statute reads in part as follows: "[a] person commits theft if he obtains or exercises control over property of another by deception and with a purpose to deprive him thereof." Utah Code Ann. § 76–6–405 (1990). This court has previously ruled that "deception" has three separate components. *State v. LeFevre,* 825 P.2d 681, 685 (Utah App.), *cert. denied,* 843

P.2d 1042 (Utah 1992). In affirming defendant's conviction in a check kiting scheme, the *LeFevre* court noted that to be guilty of deception under section 76–6–405: (1) defendant's acts must satisfy the statutory definition of deception; (2) the deception must have occurred contemporaneously with the transaction in question; and (3) the victim must have relied on the deception, to some extent, in parting with the property. *Id.*

In the present case, we conclude that the State presented sufficient evidence to create a prima facie case that defendant's acts met the three components of deception. For purposes of the first component—the statutory definition—Utah Code Ann. § 76–6–401(5) (1990) defines deception as occurring when someone intentionally:

(a) Creates or confirms by words or conduct an impression of law or fact that is false and that the actor does not believe to be true and that is likely to affect the judgment of another in the transaction; or

(b) Fails to correct a false impression of law or fact that the actor previously created or confirmed by words or conduct that is likely to affect the judgment of another and that the actor does not now believe to be true; or

. . . . .

(d) Sells or otherwise transfers or encumbers property without disclosing a lien, security interest, adverse claim, or other legal impediment to the enjoyment of the property, whether the lien, security interest, claim, or impediment is or is not valid or is or is not a matter of official record.

*Id.*

Defendant admitted that the ring he sold did not belong to him. However, the State presented testimony that defendant told the jeweler the ring contained a diamond and belonged to his wife. Because the State presented evidence that the ring did not belong to defendant, and that defendant may have lied as to how he obtained the ring and his authority to sell the ring, there was sufficient evidence for a reasonable jury to conclude that defendant intentionally "create[d] ... an impression of ... fact that is false and that the actor does not believe to be true and that is likely to affect the judgment of another in the transaction." *Id.* A finding of deception was further bolstered by evidence that defendant cashed the check the same day, despite agreeing to wait, and that defendant initially lied about the location of the money he had received in exchange for the ring. Further, defendant's intent to deceive may be inferred from his fleeing with the cash and merchandise after being informed of the ring's true value.

As for the other components of deception, the conversation involving the ring occurred during defendant's first visit to the store. Thus, the deception occurred contemporaneously with the transaction in question. Finally, Davis testified at trial that, when purchasing the ring, she relied in part on defendant's assertions.

While the evidence presented by the State may be weak, the jury is entitled to weigh the conflicting evidence and draw its own conclusion. *State v. Pierce*, 722 P.2d 780, 781–82 (Utah 1986). Therefore, when viewing the evidence in a light most favorable to the jury's verdict, it appears that "some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *Dibello*, 780 P.2d at 1225. As a result, the trial court did not err in refusing to grant defendant's motion to dismiss the theft by deception charge.[2]

### Prosecutorial Misconduct

Defendant asserts that the prosecutor's conduct during the trial was improper and called the jury's attention to matters which they should not have considered in reaching a verdict. First, defendant claims the prosecutor did not offer evidence to support his negative allusions made during cross-examination of defendant. During cross-examination, the prosecution referred to pawn shop records showing that defen-

---

2. Because we conclude that the State presented a prima facie case for theft by deception, there was no prejudice in the trial court's failure to rule promptly on defendant's motion to dismiss. Therefore, we need not consider this issue.

dant, soon after the incident, pawned the merchandise in Washington. The prosecution, however, did not introduce the pawn records into evidence. Defendant also alleges that questions regarding the disposition of the merchandise exceeded the scope of direct examination and were thus improper. Finally, defendant asserts that the prosecution improperly asked defendant to comment on the veracity of another witness.

 At trial, defendant did not object to the alleged instances of prosecutorial misconduct. Failure to object to improper questions "waives the claim unless the remarks reach the level of plain error." *State v. Palmer*, 860 P.2d 339, 342 (Utah App.), *cert. denied*, 868 P.2d 95 (Utah 1993). Plain error exists when the error "should have been obvious to the trial court, and it was harmful." *Id.* An error is harmful if it undermines the court's confidence in the verdict. *Id.*

In *Palmer*, defendant appealed his conviction of aggravated sexual abuse of a child. During cross-examination, the prosecution asked defendant whether he made incriminating statements to the victim's stepfather. Defendant denied making these statements, and the prosecution did not introduce evidence to support its claims. The *Palmer* court noted, " '[g]enerally, it is error to ask an accused a question that implies the existence of a prejudicial fact unless the prosecution can prove the existence of the fact.' " *Id.* at 343 (quoting *State v. Emmett*, 839 P.2d 781, 786–87 (Utah 1992)).

The present case, however, is easily distinguishable from *Palmer*. Here, defendant admitted during cross-examination that he pawned the merchandise in Washington. Since defendant admitted pawning the merchandise, the prosecution did not need to produce the pawn records to establish the fact. The *Palmer* ruling precludes the State from implying prejudicial facts which it cannot substantiate. It does not require the State to substantiate facts that are verified by the defendant. Therefore, failing to introduce the pawn records into evidence was not prosecutorial misconduct.

 Defendant next asserts that cross-examination regarding the disposition of the merchandise exceeded the scope of direct examination, and thus was improper because it affected defendant's credibility and character. However, Rule 611(b) of the Utah Rules of Evidence specifically allows for questioning during cross-examination pertaining to the witness's credibility. Rule 611(b) reads in part as follows: "Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness." Utah R.Evid. 611(b). Therefore, cross-examination questions regarding the subsequent sale of the merchandise related to defendant's credibility and were not improper.

 Finally, defendant argues that during cross-examination defendant was asked to comment on the veracity of another witness. Defendant alleges this drew the jury's attention to improper information and is thus reversible error. Defendant is correct in stating that it is inappropriate for the prosecution "to ask a criminal defendant to comment on the veracity of another witness." *State v. Emmett*, 839 P.2d 781, 787 (Utah 1992). Moreover, the *Emmett* court noted that "[t]he prejudicial effect of such a question lies in the fact that it suggests to the jury that a witness is committing perjury even though there are other explanations for the inconsistency." *Id.*

In the case at hand, the objectionable line of questioning was as follows:

Q: So it's your testimony that you never told anybody on that occasion that the way you came into possession of this ring was that it came from your wife, your ex-wife; is that correct? That's what I'm hearing you say now.

A: I never said it came from my wife.

Q: Did you ever say it came from your ex-wife?

A: No.

Q: You heard the testimony, and you disagree with that testimony; is that correct?

A: Yes.

Any inference from the prosecutor's questions that a previous witness lied is slight.

The questioning really served only to clarify defendant's testimony in relation to prior testimony of another witness. It did not "seek information beyond the witness's competence," and did not "suggest[ ] to the jury that a witness is committing perjury." *Id.* Moreover, we believe the questioning was not so obviously error that the trial court should have recognized it as such. Nor does the questioning undermine our confidence in the jury's verdict. *See Palmer,* 860 P.2d at 342. We therefore conclude that plain error did not occur and do not further address this issue.

## CONCLUSION

At trial, the State succeeded in establishing a prima facie case of theft by deception. Therefore, the trial court properly denied defendant's motion to dismiss that charge. Since a prima facie case was established, there was no prejudice in not promptly ruling on the motion to dismiss.

Defendant admitted he pawned the merchandise in Washington. As a result, the prosecution was not required to introduce evidence to establish that the merchandise was pawned. The prosecution's questions regarding the disposition of the merchandise did not exceed the scope of cross-examination, since they related to defendant's credibility. Finally, the prosecution's questioning regarding the testimony of another witness was not plain error.

We therefore affirm the conviction.

BILLINGS and JACKSON, JJ., concur.