2005 UT App 438

**STATE of Utah, Plaintiff and Appellant,**

v.

**Wayne A. MOWER, Defendant and Appellee.**

No. 20040491–CA.

Court of Appeals of Utah.

Oct. 14, 2005.

Mark L. Shurtleff, Attorney General, and Kris C. Leonard, Assistant Attorney General, Salt Lake City, for Appellant.

---

John T. Caine, Richards Caine & Allen, Ogden, for Appellee.

Before Judges BILLINGS, BENCH, and THORNE.

## OPINION

THORNE, Judge:

¶ 1 The State appeals from the trial court's order granting defendant Wayne A. Mower's motion to dismiss the charge of issuing a bad check, a third degree felony, in violation of Utah Code section 76-6-505(2). *See* Utah Code Ann. § 76-6-505(2) (2003). We reverse.

## FACTUAL BACKGROUND

¶ 2 Mower operates a small business providing individuals with short-term loans. Generally, borrowers secure these loans with the title to their vehicle, which Mower presumably retains until the loan is paid off.

¶ 3 On June 12, 2002, Mower agreed to loan Nick Kirkman $4900, to be secured by Kirkman's vehicle title. Kirkman did not have the title with him, but promised to deliver it to Mower by the end of the day. Mower issued Kirkman a check for $4900 (the loan check). He did not, however, fund the corresponding account with sufficient funds to clear the check pending Kirkman's provision of the vehicle title.

¶ 4 Kirkman never returned with the title. Instead, he deposited the loan check into his account at Weber State Credit Union (the credit union) and proceeded to write checks against the deposit until the entire sum was depleted. The credit union covered Kirkman's checks without verifying that Mower had sufficient funds to cover the loan check and presented the loan check to Mower's bank, which refused to pay the check based on insufficient funds. Thereafter, the credit union sent Mower a demand letter by certified mail. Mower accepted the demand letter but failed to make good on the check.

¶ 5 The credit union filed a compliant against Mower, and the State charged Mower with one count of issuing a bad check. Mower made a motion to dismiss the charge, arguing that he did not issue the loan check

for the purpose of obtaining money, property, or any other thing of value as required by the statute. *See* Utah Code Ann. § 76-6-505(2). The trial court agreed and dismissed the charge, concluding that Kirkman defrauded Mower and that Mower did not obtain or intend to obtain anything of value under *State v. Green*, 672 P.2d 400 (Utah 1983). The State appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 6 "A trial court's ruling on a motion to dismiss is a question of law." *State v. Taylor*, 884 P.2d 1293, 1296 (Utah Ct.App. 1994). "Therefore, this court reviews the trial court's decision for correctness, with no particular deference to its legal conclusions." *Id.*

## ANALYSIS

¶ 7 Mower was charged with a single count of issuing a bad check pursuant to Utah Code section 76-6-505(2), which states:

Any person who issues or passes a check or draft for the payment of money, for the purpose of obtaining from any person, firm, partnership, or corporation, any money, property, or other thing of value or paying for any services, wages, salary, labor, or rent, payment of which check or draft is legally refused by the drawee, is guilty of issuing a bad check or draft if he fails to make good and actual payment to the payee in the amount of the refused check or draft within 14 days of his receiving actual notice of the check or draft's nonpayment.

Utah Code Ann. § 76-6-505(2). At issue here is whether Mower's loan check to Kirkman was "for the purpose of obtaining from any person, firm, partnership, or corporation, any money, property, or other thing of value" as required by the statute. *Id.* Mower argued below, and the trial court agreed, that the loan check was not issued for value as that element was defined in *State v. Green*, 672 P.2d 400 (Utah 1983).

¶ 8 We first note that we must evaluate Mower's purpose in issuing the check solely as of the moment of issuance, rather than in the light of Kirkman's subsequent failure to

fulfill his obligations. *See State v. Herrera,* 1999 UT 64,¶ 4 n. 1, 993 P.2d 854 (" '[A] crime consists in the concurrence of prohibited conduct [the bad act] and a culpable mental state [the mens rea].' " (alterations in original) (quoting 1 Charles E. Torcia, Wharton's Criminal Law § 27, at 164–65 (15th ed.1993) ) ); *cf. M.H. Walker Realty Co. v. American Sur. Co. of N.Y.,* 60 Utah 435, 211 P. 998, 1005 (1922) ("[I]n order to arrive at the intent of the parties to a contract, we must consider its terms in the light of conditions as they existed at the time the contract was entered into and not in the light of subsequent conditions[.]"). Accordingly, the trial court erred to the extent it based its dismissal order on Kirkman's actions after Mower issued the loan check.

¶ 9 The application of *Green* to the facts of this case presents a somewhat closer question. In *Green,* Green attempted to open a savings account at Bank A with a $10,000 check drawn on his account at Bank B. In exchange for his check, Green received a $10,000 money market certificate maturing in six months. The next day, while Bank A was still in possession of his check, Green returned to Bank A and attempted to cancel the transaction and close his account. Bank A refused to cancel the account or return Green's check because Green would not pay an early withdrawal penalty. Green failed to fund the account upon which the check was drawn, and it was dishonored by Bank B when presented by Bank A. Green was subsequently convicted of issuing a bad check. *See id.* at 400–01.

¶ 10 On appeal, the supreme court held that Green's check was not issued "for the purpose of obtaining from [Bank A] any money, property or other thing of value belonging to [Bank A]." *Id.* at 401. The court determined that Green's check was "written for the purpose of transferring the funds from [Green's Bank B] account to the new account established at [Bank A]," and that the money market certificate was "nothing more than a receipt for [Green's] own funds." *Id.* There was evidence that the certificate "was not negotiable and could not be redeemed, cashed or borrowed against until the check creating the deposit had cleared [Bank B]." *Id.* Under those circumstances, the court held that it is not a crime "for a person to write a bad check on one account and deposit it to another account of his." *Id.*

¶ 11 Turning to the present case, we first reject the State's argument that *Green* is inapplicable because Mower is being prosecuted under subsection (2) of Utah Code section 76–6–505, which was added to the statute after *Green* was issued. *See* Utah Code Ann. § 76–6–505(2). Subsections (1) and (2) differ only in that subsection (1) requires that a defendant know that the check will not be paid by the drawee at the time of issue, while subsection (2) dispenses with the knowledge requirement and substitutes a duty to make good on the check within fourteen days of actual notice of the drawee's nonpayment. *See id.* § 76–6–505(1)–(2). Both subsections of the current statute, as well as the statute analyzed in *Green,* contain the "for the purpose of obtaining" element. *See id.; Green,* 672 P.2d at 401. Accordingly, if Mower's check was not issued "for the purpose of obtaining" something of value under *Green,* he cannot be convicted under either subsection of the current statute.

¶ 12 We agree with the State, however, that *Green* would not prevent Mower's conviction for issuing a bad check, at least not on the limited facts presented to this court. As the *Green* court noted, Green's act of writing a check on an account at one bank and depositing it into his own account at a different bank amounted to "nothing more than . . . writing himself a worthless check." *Id.* Mower's act of writing a check to Kirkman as a personal loan cannot be similarly characterized.

¶ 13 We determine that *Green* does not control in light of the facts of this case. The question remains, however, whether a reasonable jury could find that Mower issued the loan check for the purpose of obtaining something of value. *See State v. Hamilton,* 2003 UT 22,¶¶ 40–41, 70 P.3d 111 (explaining that a motion to dismiss in a criminal case should be denied if the State can produce "believable evidence of all of the elements of the crime charged" sufficient to allow a reasonable jury to convict (quotations and cita-

tions omitted) ). In making this determination, we "view all evidence in the light most favorable to the [State] and must draw all *reasonable* inferences in favor of the [State]." *State v. Hester,* 2000 UT App 159,¶ 7, 3 P.3d 725.

¶ 14 Mower issued the loan check in exchange for Kirkman's legally enforceable promise to repay the loan. The right to repayment on the loan, as well as the expectation of interest and/or fees, constitutes a thing of value as contemplated by the bad check statute.[1] *See* Utah Code Ann. § 76–6–505(2); *State v. Bartholomew,* 724 P.2d 352, 355 (Utah 1986) (holding that defendant obtained a thing of value when he "acquir[ed] the rights to order the stock in his account sold and to receive any profit that might be realized from such a sale"). As such, Kirkman's obligation to repay the loan is sufficient to satisfy the thing of value requirement of the bad check statute regardless of Kirkman's failure to produce the title to his vehicle as security for the promised repayment of the loan.[2]

¶ 15 The vehicle title provides an additional, but unnecessary, basis to support a conclusion that Mower issued his check for the purpose of obtaining a thing of value. Mower allegedly issued the check with the understanding that Kirkman would promptly provide his vehicle title as security on the loan. This security interest in Kirkman's vehicle would have increased the value of Mower's loan to Kirkman, both to Mower directly and to any secondary market, by increasing the likelihood that the loan would ultimately be repaid. Further, in the event of Kirkman's default on the loan, Mower could presumably obtain a direct ownership interest in the vehicle, at least up to the amount of value that Kirkman owed him. The vehicle title was therefore an additional thing of value to be obtained by Mower through the issuance of the check.

## CONCLUSION

¶ 16 Even on the very limited record before us, the State has presented some evidence that Mower issued the loan check for the purpose of obtaining something of value, which is sufficient to defeat a motion to dismiss. The trial court's granting of Mower's motion to dismiss was in error and we reverse the trial court's dismissal order and remand this matter for further proceedings.

¶ 17 I CONCUR: JUDITH M. BILLINGS, Presiding Judge.

¶ 18 I CONCUR IN THE RESULT: RUSSELL W. BENCH, Associate Presiding Judge.

---

1. The State indicated at oral argument that it was relying on Kirkman's vehicle title, rather that his promise to repay money, as the "thing of value" required by Utah Code section 76–6–505. Utah Code Ann. § 76–6–505(2) (2003). To the extent the State intended to concede that an enforceable promise to repay money is not a thing of value under the statute, such concession represents a legal conclusion with which we disagree. *See In re Water Rights,* 2004 UT 106, ¶ 16, 110 P.3d 666 (" 'The interpretation of a statute presents a question of law[.]' " (alterations omitted) (quoting *Parks v. Utah Transit Auth.,* 2002 UT 55, ¶ 4, 53 P.3d 473)).

2. Additionally, we see nothing in the record to indicate that Mower's interest in the loan agreement was not immediately assignable upon execution of the loan contract. *See Clark v. Shelton,* 584 P.2d 875, 877 (Utah 1978) ("Generally, the law favors the assignability of contractual rights, unless the assignment would add to or materially alter the obligator's duty or risk."). Under the limited record before us, we consider it a reasonable inference that the loan was assignable, and that Mower could therefore have immediately sold the loan for whatever the secondary market would bear. Clearly, even without security, an assignable legal right to collect $4900 plus interest and/or fees has some immediate value sufficient to satisfy the "purpose of obtaining" element of the bad check statute. Utah Code Ann. § 76–6–505(2).